Howky, J.,
delivered the opinion of the court:
This action is for the recovery of a certain amount of salary alleged by plaintiff to be due to him as United States commissioner for the Indian Territory, by virtue of an original appointment to that office under section 39 of the act of May 2, 1890 (1 Supp. E. S., 737), and his reappointment to the same office under a subsequent act, approved March 1, *100 1895 (2 Supp. R. S., 394), but from which office plaintiff was removed by an order of the judge of the court for the division in which he was serving as commissioner without any cause prescribed by law. The amount sued for is $5,375, being at the rate of $1,500 for each year, beginning at the time plaintiff surrendered the office under protest to the person named as his successor.
On January 31, 1896, the following order or notice was made and entered upon the records of the United States court for the Indian Territory, in the southern district thereof, by the Hon. Constantine B. Kilgore, judge of said court:
“To Hon. W. R. Reagan,
“ United States Commissioner for the Fourth Com/mis sioneds District i/n amd for the Southern District of the Indñam, Territory.
“Sir: I feel it my duty to declare the office of commissioner in that district vacant, and to notify you that you are no longer United States commissioner for that district, and your successor will be named at once.
“There are many reasons which I could assign for my action in this behalf, but I will only suggest one now; that is, your age and the infirmities incident thereto render you, in my judgment, in many respects unfit for the office.
“Very respectfully, your obedient servant,
“C. B. Kilgore.”
When knowledge of this order was brought to plaintiff’s attention, he protested that it was insufficient to effect his removal under the law, and he accordingly made protest to the judge through the United States attorney for the district of his action. Thereupon John R. Williams, who had been designated as commissioner in plaintiff’s place, came to take possession forcibly of the office and books of which plaintiff was possessed as commissioner, being accompanied by two deputy marshals for the purpose of enforcing the order of the judge. Plaintiff refused to turn over said office or papers or to recognize his successor in said office, but finally yielded to the exercise of superior force, joining with his successor in an agreement duly reduced to writing by which the books and papers of the office were surrendered to the person designated *101 by the judge as successor, the removed official yielding with the understanding that no rights were waived by him. -
Since the time named in the petition plaintiff alleges that he has not been paid any part of the salary justly due to him, nor has he attempted to perform any of the duties of the office, but' he maintains that he has legally continued to hold said office and is entitled to its emoluments.
Section 4 of the act of March 1, 1895, which increased the number of commissioners, is in the following language:
“ That the present commissioners shall be included in that number and shall hold office under their existing appointments, subject to removal by the judge of the district where said commissioners reside, for causes prescribed by law. ”
The contentions here arise from the use of the words “ for causes prescribed by law” in the foregoing act,.the claimant contending (1) that these words require notice and a hearing-before the order of removal could become effective, and (2) that the letter of removal having stated no cause prescribed by law, plaintiff’s title to the office was not affected by the order.
The case is one of first impression under a very peculiar statute and presents some novel features. Precedents directly in point are entirely wanting and the issues must be determined without those guides which relate to other officers where the right to hold against an order of removal is the question.
If plaintiff’s contentions are correct, then his indefinite tenure of office has been nominal and attended with no responsibilities or duties; and while the defendants should not be. heard to say that by the unlawful act of one of their officers plaintiff has not performed these duties or continued to have these responsibilities, it is to be noted that if the plaintiff has not been legally removed from office, the statute under which he claims gave him a tenure not accorded to his official superiors in the persons of the judges of the courts for the Indian Territory and virtually made him a commissioner for life. Practically he would hold except for such misbehavior as would be cause for'the impeachment and removal of the judges of some of the courts of the United *102 States. In this respect the statute under which he claims is most extraordinary if it be what is claimed for it.
Reversing the order of presentation of plaintiff’s contentions, it is first to be stated that there are no causes defined by any statute of the United States for the removal of commissioners in the Indian Territory. The researches of counsel have not been able to exhibit to us any statute designating causes for such removals, nor have our own investigations enabled us to find any rule on the subject. The act of 1895 contains nothing more specific than the general words quoted, and nothing more definite has since that time been enacted.
It is contended that if a cause is found against a commissioner in the Indian Territory which would, within the laws of Arkansas, have been cause for the removal of a justice of the peace, the commissioner may then be removed; otherwise, protected by this provision of the statute, he is not subject to removal by the courts of the United States.
By section 31 of the act of 1890, supra, the laws of the State of Arkansas, appearing in Mansfield’s Digest, are put in force in the Indian Territory according to the chapters relating to different subjects specified in this section.
By section 39 commissioners were authorized to be appointed, and when appointed to have within the district to be designated in the order of court appointing them all the powers of commissioners of the circuit courts of the United States. The provisions of chapter 91 of said laws of Arkansas regulating the jurisdiction and procedure before justices of the peace in Arkansas were extended over the Indian Territory.
By section 4 of the act of 1895 (28 Stat. L., 696) the provisions of chapter 45 of Mansfield’s Digest of the general laws of Arkansas, entitled “ Criminal law” (except as to the crimes and misdemeanors mentioned in the proviso of this section), and chapter 46 of said laws of Arkansas contained in said digest, entitled “ Criminal procedure,” and chapter 91 of said general laws, regulating the jurisdiction and procedure before justices of the peace in civil cases, were extended to and put in force in the Indian Territory.
The effect of this provision, according to plaintiff’s contention, is to make the commissioners the equivalent'of justices of the peace in Arkansas; that is.to say (to state the matter in *103 anotaer form), tbat as no Federal statute prescribed specific causes for removal of commissioners, in order to find what causes are prescribed by law for their removal resort must be had to those causes defined by the laws of Arkansas for the removal of justices of the peace.
An examination of the criminal law and procedure of Arkansas extended to and put in force in the Indian Territory shows that Congress did not specifically apply to the removal of commissioners in the Territory the sole causes for which justices of the peace might be removed in Arkansas. The effect of the construction for which plaintiff contends would be to hold the commissioners in office for life unless some of the causes defined by the laws of Arkansas become operative upon them. Incapacitjq old age, removal from one district into another, and reasons which might otherwise be regarded as good causes for removal, could not affect the commissioners under the laws of Arkansas, as those laws do not include the things just mentioned among the causes for removal. The reasons are clear. Justices of the peace are elected in Arkan - sas for terms of short duration. Their tenure of office being-for two years only, Congress could not have intended to apply the rules applicable to the removal of elected officials in Arkansas within their short period of service to commissioners in the Indian Territory who held by appointments for uncertain and indefinite periods of time. The contrary view would be in restriction of the causes for removal to a degree not contemplated by Congress in any event.
What, then, is the meaning of the act of 1895 when it apparently attempted to differentiaté the manner of removal of commissioners in the Indian Territory from the way commissioners in the circuit courts of the United States are usually removed?
On the surface it would seem very unreasonable to say that nothing was meant by this statute. Generally speaking, it is not for the courts to hold a statute meaningless if a reasonable construction can give meaning or force to its provisions. In the consideration of the particular statute in question it should, like all other statutes presumably enacted for a purpose, be given such meaning as its language fairly implies and to the full extent of the accomplishment of its supposed *104 objects. But having no clear meaning- for want of specific statutory prescription for causes of removal, the displacement of these commissioners (it is again contended) must either be referred by the act of 1895 to such causes as would be recognized in courts as a just ground for removal, or if no present effect be given to the words, removal must await legislative definition of the causes.
It would be an unsafe guide to follow if we should adopt the suggestion that the words of the act under construction refer to such causes as the courts, in the attempt to prescribe statutory causes, might recognize as just grounds for removal. What would seem to be just grounds for removal by one court would perhaps seem to be unjust grounds bjr another tribunal, and the results such as to lead to uncertainty and confusion. No uniform rule could exist until the court of highest authority could lay down some certain cause or causes under the statute by which the inferior courts could be imperatively governed. But aside from this, the power “to prescribe by law” is a legislative function and can not be conferred on judicial officers. (Exline v. Smith, 5 Cal., 112; Burgoyne v. Supervisors, 5 lb., 9.)
It seems most unreasonable, however, to say that Congress passed this law with the intention of making these Territorial commissioners, irremovable. Commissioners in other parts of the country are subject to removal, and we can not adopt • the view that by this legislation it was the policy to keep those in the Indian Territory in office until the legislative function of naming the special causes should at some future time follow the general statute. It can not be ascribed to Congress the intention of defining causes by future legislation, thereby holding up the matter in continued derogation of ordinary judicial right. The words used do not say that commissioners shall be removed for causes to be prescribed, but for causes prescribed — that is, in the ordinary import of words, that the causes were already established by law. As the causes were not in fact already prescribed, we must view the act of 1895 as incomplete and importing nothing more than causes such as would, according to the practice of the courts (not purely arbitrary), operate to secure the removal of those officers elsewhere.
*105 The question of the right of plaintiff to notice and a hearing is not involved unless the statute affords him that protection and right. As the statute does not do this, plaintiff must be regarded as subject to removal in the same manner as others “ of his class. All commissi oners'are quasi judicial officers, who perform their duties under the direction of the courts, and in effecting their removal the courts are not bound to accord to them any higher or greater consideration than is accorded to auditors, referees, and receivers, who may be removed without the formalities of a hearing and a trial. Their removal is not subversive of any fundamental principle of official tenure and responsibility as in those English cases where the right to hold the office was either by prescription or other tenure, or those cases in this country where the official was in commission by virtue of an election by the people or for a fixed term by virtue of Executive appointment and confirmation at the hands of an advisory body.
Where the statute gives a power of removal “ for cause,” without any specification of the causes, this power is of a discretionary and judicial nature, and unless the statute otherwise especialty provides, the exercise thereof can not be reviewed by any other tribunal, with respect either to the cause or to its sufficiency or extent, or otherwise. Even in some cases where the statute specifies.the cause of removal it has been ruled that the removing authority is the sole and exclusive judge of the cause and the sufficiency thereof, and that the courts can not review the decision in any case where jurisdiction existed. People ex rel. v. Stout, 11 Abb. Pr. (N. Y.), 17; S. C., 19 How. Pr. (N. Y.), 171; People v. Bearfield, 35 Barb., 254; Patton v. Vaughan, 39 Ark., 211; People v. Hill, 7 Cal., 97; City of Hoboken v. Gear, 25 N. J. L., 265; Smith v. Brown, 59 Cal., 672; People ex rel. v. Higgins, 15 Ill., 110.
This is not a case where the power of a judicial tribunal is invoked to ascertain and enforce the legal rights of an individual against the act or authority of other individuals or of the legislative or executive departments, but involves the function of 'deciding upon the validity of the removal by order of another judicial tribunal. If there was discretionary power in the judge, or if his act was made conclusive as to *106 the right involved, as we think it was, it is not within the province of this court to inquire into the propriety or impropriety of the act.
These views render unnecessary any consideration of the question raised in the argument that payment of the salaiy of an office bjr a public body to a defacto officer is a defense to an action l;y a de jure officer for such salaiy; and that title to an office can' be determined only in a direct proceeding-instituted for that purpose and can not be determined in an action to recover the salary thereof on any other collateral proceeding.
The petition is dismissed.