ECKLOFF *v.* DISTRICT OF COLUMBIA.

ERROR TO THE SUPREME COURT OF THE DISTRICT OF COLUMBIA.

No. 244.  Submitted March 27, 1890. — Decided April 28, 1890.

Under the act of June 11, 1878, 20 Stat. 102, c. 180, the commissioners of the District of Columbia have the power to summarily remove and dismiss from the police force of the District officers and members of that force.

ASSUMPSIT against the District of Columbia, to recover salary alleged to be due the plaintiff as an officer in its police corps. Judgment for defendant, to which this writ of error was sued out. The case is stated in the opinion.

*Mr. C. C. Cole* and *Mr. W. L. Cole* for plaintiff in error.

*Mr. George C. Hazleton* for defendant in error.

MR. JUSTICE BREWER delivered the opinion of the court.

On March 31, 1883, the plaintiff in error, who had been for years theretofore a lieutenant of the police force of the District of Columbia, was removed from office by the commissioners of the District. This removal was without any written charges preferred against him, or any notice or hearing. Challenging the validity of such removal, he brought his action for salary subsequent thereto. At the trial of the case, at a special term of the Supreme Court of the District, his summary removal was adjudged unauthorized, and his claim for salary sustained. This judgment was reversed by the court at its general term, and the action dismissed at his cost. 4 Mackey, 572. To reverse that judgment of the general term, this writ of error is prosecuted.

The single question presented by the record is, as to the power of the commissioners to remove a police officer without charges, notice or hearing. The act of June 11, 1878, 20 Stat. 102, c. 180, by which the police force was placed under the control of the commissioners of the District, empowers them,

(§ 3,) "to abolish any office, to consolidate two or more offices, reduce the number of employés, remove from office and make appointments to any office under them authorized by law." If this were all the legislation, there would be no question, for the grant of a general power to remove carries with it the right to remove at any time or in any manner deemed best, with or without notice; but the contention of the plaintiff in error is, that this unrestricted right of removal is limited by the provisions of prior statutes.

In 1861 an act was passed creating a metropolitan police system for the District of Columbia, and establishing a police for such district. 12 Stat. 320, c. 62. By that act a board, consisting of five commissioners, was created, to whom was given full control over the police force. This board was continued until the act of 1878, and its power of removal was limited by this provision: "No person shall be removed from the police force except upon written charges preferred against him to the board of police, and after an opportunity shall have been afforded him of being heard in his defence; and no person removed from the police force for cause shall be reappointed to any office in said force." Sec. 8 of the act of 1861, embodied in Rev. Stat. D. C. § 355. And the contention is that the act of 1878 simply changed the control from one board to another; that this limitation on the power of removal was not expressly repealed by the act of 1878; that repeals by implication are not favored; and therefore that, construing the old law with the new, whatever power the new board had over other subordinates, its power over the police was subject to that limitation. On the other hand, it appears that in 1871 an act was passed providing a government for the District of Columbia. 16 Stat. 419, c. 62. This established a territorial government, with a governor and legislative assembly, to which the general administration of the affairs of the District was committed. It did not change the police department, which was left, as theretofore, under the charge of the police commissioners. This territorial system not proving satisfactory, Congress, in 1874, (18 Stat. 116,) abolished it, and vested the affairs of the District in a commission. That act

contained the provision we have heretofore quoted from the act of 1878; and gave to this commission large powers of administration, but without control of the police or the schools. Evidently this scheme of administration was experimental, as section 5 of the act provided for the appointment of a committee of Congress, to prepare a suitable frame of government for the District and report the same to the succeeding Congress. The experiment was found to be satisfactory, and in 1878, four years thereafter, the act from which we first quoted was passed, which was entitled "An act providing a permanent form of government for the District of Columbia." Following the idea and enlarging the scope of the act of 1874, the general administration of affairs was vested in a commission, and to that commission was given control also over the police and schools; for by section 6 it was provided: "That from and after the first day of July, eighteen hundred and seventy-eight, the board of metropolitan police and the board of school trustees shall be abolished; and all the powers and duties now exercised by them shall be transferred to the said commissioners of the District of Columbia, who shall have authority to employ such officers and agents and to adopt such provisions as may be necessary to carry into execution the powers and duties devolved upon them by this act. And the commissioners of the District of Columbia shall, from time to time, appoint nineteen persons, actual residents of said District of Columbia, to constitute the trustees of public schools of said District, who shall serve without compensation and for such terms as said commissioners shall fix. Said trustees shall have the powers and perform the duties in relation to the care and management of the public schools which are now authorized by law."

It will be noticed that a distinction is provided between the police and the schools. An intermediate board is to be appointed for the latter, while the direct control of the police is given to the commissioners; and they "are authorized to adopt such provisions as may be necessary to carry into execution the powers and duties devolved upon them by this act." When to a board having general administrative supervision of

the affairs of a community, and with plenary power in the matter of appointment and removal of subordinates, is added the control of another department, and no express words of limitation are found in the act making the transfer, it is to be presumed that such board has the same plenary power in respect to this new department, and is not hampered by limitations attached to the board which theretofore had control of it. The presumption against implied repeal obtaining in the construction of ordinary statutes yields to the inferences arising from the subject matter of legislation. Plenary powers having been found by experience valuable in the management of affairs already under the control of the board, the transfer of another department to the same control carries with it a strong implication that the added department is subject to the same plenary powers. The primary thought is not a mere transfer of authority, but the bringing of the added department within the control of the general supervising board. It is unity of administration and not change of commission.

But our conclusions are not controlled by this construction alone. The court below placed its decision on what we conceive to be the true significance of the act of 1878. As said by that court, it is to be regarded as an organic act, intended to dispose of the whole question of a government for this District. It is, as it were, a constitution for the District. It is declared by its title to be an act to provide " a permanent form of government for the District." The word permanent is suggestive. It implies that prior systems had been temporary and provisional. As permanent it is complete in itself. It is the system of gov nment. The powers which are conferred are organic powers. We look to the act itself for their extent and limitations. It is not one act in a series of legislation, and to be made to fit into the provisions of the prior legislation, but is a single complete act, the outcome of previous experiments, and the final judgment of Congress as to the system of government which should obtain. It is the constitution of the District, and its grants of power are to be taken as new and independent grants, and expressing in themselves both their extent and limitations. Such was the view

taken by the court below; and such we believe is the true view to be taken of the statute. Regarded in this light, but one interpretation can be placed upon the section quoted. The power to remove is a power without limitations. The power is granted in general terms, as well as the authority to adopt such provisions as may be necessary to carry it into execution. Full authority is given to the commission; and in the absence of rules and regulations directing a different procedure, its act of summary dismissal cannot be challenged.

*The judgment is affirmed.*