Mr. Justice James
delivered the opinion of the Court:
This is an action for money payable for work done and services rendered by the plaintiff as a private officer of the Metropolitan police force. The plaintiff was appointed and commissioned on the 4th of June, 1890, upon pay or salary •at the rate of $75 per month, and performed services until the 19th of August, 1890, when he was relieved from duty without receiving compensation. The District has interposed a special plea that the plaintiff ought not to recover because, at the time of his appointment he had not served in the Army or Navy of the United States, and because such service was and is a condition precedent to legal appointment on the police force.
To this plea a demurrer was filed by the plaintiff, and the •case has been certified to the General Term', to be heard here in the first instance.
The question involved is, whether Section 354 of the Re *59 vised Statutes of the District of Columbia has been repealed by the Act of June n, 1878, 20 St., 102.
This section was drawn from the Act of August 6, 1861, 12 St., 321, and the Act of March 3, 1867, 14 St., 457; and provided that: “ No person shall be appointed to office, or hold office in the police force, who cannot read and write the English language, or who is not a citizen of the United States, or who shall ever have been indicted and convicted of crime; ■and no person shall be appointed as policeman or watchman who has not served in the Army or Navy of the United States and received an honorable discharge.”
The first clause of this section was one óf the provisions of •an act which established a police force and provided for its government. It provided “ a board of five Commissioners of Police,” Rev. St, sec. 322; gave to that' board authority to make “ rules and regulations for the proper government and discipline of its subordinate officers,” Rev. St., sec. 337; provided that the officers of the force should be appointed by the board (sec. 341), and for the method of their removal, (sec. 355). In short, that statute provided a complete scheme for the organization and government of the police force as a separate and independent department of the municipal institutions of the District of Columbia.
In 1878, this scheme of organization and government was abandoned, and Congress, by the Act of June 11, 1878, 20 St., 102, ch. 180, merged the police establishment in what was intended to be a complete system of government for this District, concentrating in the hands of the District Commissioners the powers and duties which had been independent of them, and giving, for their more perfect performance, enlarged and additional powers. Eckloff vs. The District, 4 Mackey, 572; 135 U. S., 240.
The third section of the new act authorized the District Commissioners “ to abolish any office, * * * remove from office, and make appointments to any office under them authorized by law.” The sixth section provided: “ That from and after the 1st day of July, 1878, the Board of Metro *60 politan Police and the Board of School Trustees shall be abolished, and all the powers and duties now exercised by them shall be transferred to the Commissioners of the District of Columbia, who shall have authority to employ such officers and agents, and to adopt such provisions as may be necessary to carry into execution the powers and duties devolved upon them by this act.”
The effect of this grant of powers was considered in the case above referred to. We cannot do better than to quote at some length the statement of Mr. Justice Brewer, speaking for the court, in Eckloff vs. The District, 135 U. S., 242-3. He said:
“ When to a board having general administrative supervision of the officers of a community, and with plenary power in the matter of appointment and removal of subordinates, is added the control of another department, and no express words of limitation are found in the act making the transfer, it is to be presumed that such board has the same plenary power in respect to this new department, and is not hampered by limitations attached to the board which theretofore had control of it. The presumption against implied repeal obtaining in the construction of ordinary statutes yields to the inferences arising from the subject matter of legislation. Plenary powers having been found by experience valuable in the management of affairs already under the control of the board, the transfer of another department to the same control carries with it a strong implication that the added department is subject to the same plenary powers. The primary thought is not a mere transfer of authority, but the bringing of the added department within the control of the general supervising board. It is unity of administration and not change of commission.
“But our conclusions are not controlled by this construction alone. The court below placed its decision on what we conceive to be the true significance of the Act of 1878. As said by that court, it is to be regarded as an organic act, intended to dispose of the whole question of a government for *61 this District. It is, as it were, a constitution for the District. It is declared by its title to be an act to provide ‘ a permanent government for the District.’ The word permanent is suggestive. It implies that prior systems had been temporary and provisional. As permanent it is complete in itself. It is the system of government. The powers which are conferred are organic powers. We look to the act itself for their extent and limitations. It is not one act in a series of legislation, and to be made to fit into the provisions of the prior legislation, but is a single complete act, the outcome of previous experiments, and the final judgment of Congress as- to the system of government which should obtain. It is the constitution of the District, and its grants of power are to be taken as new and independent grants, and expressing in themselves both their extent and their limitations. Such is the view taken by the court below; and such we believe to be the true view to be taken of the statute.”
The particular question under consideration in that case was, whether the Commissioners were restricted, in the matter of removals, by the provision which forbade the Board of Police — to whose powers they succeeded — to remove officers . except after a trial. We conceive that the reasoning of the Supreme Court is equally applicable to the.subject of appointments, and demonstrates that, in that respect also, the District Commissioners were freed from the restrictions and limitations which had affected the system which was done away. Indeed the grant of power contained in the sixth section of the new or organic act, hardly seems to call for the processes of construction. It distinctly provides that the Commissioners “shall have authority to employ such officers * * * as may be necessary to carry into execution the powers and duties devolved upon them by this act.” This language, as a matter of mere interpretation, indicates a plenary power as to .the selection of the persons to be appointed. It appears in terms to exempt the appointing power from restrictions or limitations in their selection.
We hold, then, that the section referred to in the plea is *62 not now in ’force, and that the Commissioners of the District had, at the time of the plaintiff’s appointment, full power to-appoint on the police force persons who had never served in the Army or Navy of the United States.
We think it is proper to add that the considerations which induced Congress to provide this qualification of service in the Army or Navy are matters of public history, of which, this court may take judicial notice, and that, in our opinion, if was the legislative intention to make an honorable discrimination in favor of the men who had then recently returned to-the competitions of civil life after service in the late war. On the other hand, there is no reason to suppose that Congress would thus discriminate in favor of men who enlist in these services in time of peace. And the strict terms of the statute are consistent with an interpretation which limits that discrimination to service rendered before its passage. The language used in 1867 was that: “ No person shall be appointed as policeman or watchman who has not served in the Army or Navy of the United States, and received an honorable discharge.” We are aware that this form of expression is often used when the statute intends to include an event or condition recurring from time to time after its enactment; but there is, in this respect, no rigid rule of interpretation. It will be understood that only a past event or condition is referred to, when there is reason to hold that such was the legislative intent. It is not likely, we repeat, that Congress intended to discriminate between the citizen and the soldier or sailor of a peace establishment.

I11 accordance with these views, judgment will be entered for the plaintiff at the rate of compensation agreed on at the time of his appointment.