# UNITED STATES OF AMERICA EX REL. BROWN *v.* LANE.

---

INDIANS; TRIBAL COUNCIL; REMOVAL, RIGHT OF; NOTICE AND HEARING.

Under a statute authorizing the Secretary of the Interior to remove members of the Tribal Council of the Osage Indians, elected by the members of the tribe, for good cause, "to be by him determined," the Secretary may remove a member of the council, without notice or hearing. (Construing the act of Congress of June 28, 1906, 34 Stat. at L. 539, chap. 3572.)

No. 2531.   Submitted May 6, 1913.   Decided June 2, 1913.

HEARING on an appeal by the petitioner from a judgment of the Supreme Court of the District of Columbia, overruling a demurrer to a return to a petition for a writ of mandamus, and the petitioner electing to stand on his demurrer, discharging the rule to show cause, theretofore issued, and dismissing the petition.                                        *Affirmed.*

The COURT in the opinion stated the facts as follows:

The appellant, Alpheus H. Brown, filed in the supreme court of the District a petition for a writ of mandamus to compel the Secretary of the Interior to revoke an order removing him and certain others from membership in the Osage Tribal Council, to recognize him and said others as members of said council, and to revoke an order directing an election in the Osage Nation

to fill the vacancies caused by said removals. A rule issued, to which a return was made. Appellant thereupon demurred to the return, the demurrer was overruled, and, appellant electing to stand upon his demurrer, the rule was discharged, the petition dismissed, and the case brought here. Franklin K. Lane, the present Secretary of the Interior, has been substituted as defendant.

The facts, as stated in the petition, are substantially as follows: Sec. 9 of "An Act For the Division of the Lands and Funds of the Osage Indians in Oklahoma Territory, and for Other Purposes," approved June 28, 1906 (34 Stat. at L. 539, chap. 3572), provides for a biennial election of officers for the tribe as follows: "A principal chief, an assistant principal chief, and eight members of the Osage Tribal Council, to succeed the officers elected in the year 1906 * * *; and the first election for said officers shall be held on the first Monday in June, 1908, in the manner to be prescribed by the Commissioner of Indian Affairs, and said officers shall be elected for a period of two years, commencing on the first day of July following said election, and in case of vacancy in the office of principal chief, by death, resignation, or otherwise, the assistant principal chief shall succeed to said office, and all vacancies in the Osage Tribal Council shall be filled in a manner to be prescribed by the Osage Tribal Council, and the Secretary of the Interior is hereby authorized to remove from the council any member or members thereof for good cause, *to be by him determined.*" An election was held on the first Monday in June, 1912, in accordance with the provisions of said act, and the appellant was elected a member of the Tribal Council for a term of two years, beginning July 1, 1912, and the other offices mentioned in said sec. 9 were also filled. During the month of July, 1912, the then Secretary of the Interior, without notice or hearing, passed an order removing appellant as a member of said council, and on January 2, 1913, without notice or hearing, an order was passed, which is inserted in the petition, removing each member of said council. In this order the Secretary said: "It is not necessary that I should assign the

reasons for this action, but in order that these reasons may be known by all of the members of the Osage tribe and by all others interested, I state as the reason for my action that the Osage Tribal Council, as constituted prior to this order, has shown by the things it has done and the things it has failed to do that it has been controlled by influences hostile to the best interests of the tribe, and the said council and each member thereof has proven recreant to the duty owed to the tribe by the said council and its members. It has permitted outsiders (some of whom have financial interest in the matters involved) to influence its policies and its actions, contrary to the interests of the tribe, and in matters of the greatest importance to the tribe. It has refused to follow the expressed wishes of the majority of the adult male members of the tribe, that the bids made on the 11th day of November, 1912, for leases on the oil and gas deposits belonging to the tribe be accepted, and that leases be executed thereon. It has persisted in attempting to have these deposits leased on terms and in a manner definitely disapproved by the Secretary of the Interior, whose action in this matter has been sustained by the President of the United States after a hearing given to parties interested in securing such leases. It has failed to take any step to fill the vacancy in the office of principal chief, caused by the removal of Bacon Rind, or the vacancy in the office of assistant chief, caused by the removal of Henry Redeagle, or the vacancy in the membership of the Tribal Council caused by the removal of Thomas West. It has even failed to provide any method of filing vacancies in the Tribal Council, and this failure compels me to take the necessary steps for this purpose.

(Signed)       Walter L. Fisher, Secretary"

The answer of the Secretary admitted the removal of the appellant and other members of said council, denied the averments of the petition that they had demeaned themselves properly, and faithfully discharged their duties, and averred that they were removed as stated in the petition, and that they "were and have been guilty of nonfeasance and malfeasance in the discharge of their duties as members of said council; and

particularly in regard to certain oil and gas mining leases, improperly and wrongfully secured by a certain corporation known as the 'Uncle Sam Oil Company' * * *; that relator, as well as the other members of said Osage Council so removed by him (the Secretary), were improper persons to be or remain members of said council," etc. It is further averred in the answer that the Secretary, pursuant to the authority in him vested by the provisions of sec. 9 of said act of June 28, 1906, "determined that just and good cause existed for the removal of relator and the other members named in his (the Secretary's) order, from membership in said Tribal Council, and did then and there rightly and lawfully remove him, the said relator, and them, the members mentioned in paragraph 7 of the petition, as members of said council."

*Mr. Andrew Wilson, Mr. Albert L. Wilson,* and *Mr. James P. Schick* for the appellant.

*Mr. Charles W. Cobb,* Assistant Attorney General, and *Mr. C. Edward Wright* for the appellee.

Mr. Justice ROBB delivered the opinion of the Court:

That these Osage Indians are wards of the nation must be kept in mind. The primary object of statutes affecting the Indian has ever been his own protection; and nowhere is this object more clearly discernible than in the act here under consideration. Without going into details, it may be observed that under sec. 3, oil and mineral leases may be made by the tribe through its Tribal Council, but with the approval of the Secretary of the Interior, and under such rules and regulations as he may prescribe. Under this section no mining of or prospecting for any minerals may be made without the written consent of the Secretary. Sec. 8 authorizes all deeds to said Osage lands to be executed by the principal chief of the tribe, no deed to be valid, however, until approved by the Secretary. While sec. 9, to which reference has already been made, authorizes the elec-

tion of the officers therein named for a period of two years, that authorization is coupled with the condition that the Secretary may remove from the council any member or members "for good cause, to be by him determined." Having clothed the Secretary with supervisory control of the acts of those officers, it was but natural that Congress should specifically clothe him with authority to displace and supersede the officers themselves, if, in his judgment, it should become necessary. That their right to hold office was subject at all times to the right of the Secretary to remove them is too plain for argument. The only question is whether notice and hearing were prerequisites to the removal.

In *Eckloff* v. *District of Columbia,* 135 U. S. 240, 34 L. ed. 120, 10 Sup. Ct. Rep. 752, the Supreme Court gave expression to the rule that "the grant of a general power to remove carries with it the right to remove at any time or in any manner deemed best, with or without notice." There authority was conferred upon the Commissioners of the District of Columbia "to abolish any office, to consolidate two or more offices, reduce the number of employees, remove from office, and make appointments to any office under them authorized by law." The court observed that the power to remove was a power without limitations, and hence that, in the absence of rules and regulations directing a different procedure, a summary dismissal thereunder could not be challenged. In *Reagan* v. *United States,* 182 U. S. 419, 45 L. ed. 1162, 21 Sup. Ct. Rep. 842, the court said: "The inquiry is therefore whether there were any causes of removal prescribed by law March 1, 1895, or at the time of the removal. If there were, then the rule would apply that where causes of removal are specified by Constitution or statute, as also where the term of office is for a fixed period, notice and hearing are essential. If there were not, the appointing power could remove at pleasure or for such cause as it deemed sufficient." *Shurtleff* v. *United States,* 189 U. S. 311, 47 L. ed. 828, 23 Sup. Ct. Rep. 535, involved the question whether the President had power to remove from office a general appraiser of merchandise, without

notice or hearing, when the statute under which he was appointed provided for his removal from office "at any time for inefficiency, neglect of duty, or malfeasance in office. * * * " The court ruled that a removal for any of the causes authorized in the statute could be made only after notice and an opportunity to be heard, assumed that the removal was for causes other than those specified, and held that the action of the President was valid under his general power of removal. The court observed: "The only restraint in cases such as this must consist in the responsibility of the President under his oath of office, to so act as shall be for the general benefit and welfare."

In *Re Carter,* 141 Cal. 316, 74 Pac. 997, the court suggested that, in creating an office, the government may impose such limitations and conditions with respect to its duration and termination as may be deemed best; and that the incumbent takes the office subject to those limitations and conditions. In *O'Dowd* v. *Boston,* 149 Mass. 443, 21 N. E. 949, it was ruled that under a statute providing that officers and boards of the city of Boston may remove their subordinates "for such cause as they may deem sufficient and shall assign in their order for removal," a subordinate may be summarily removed without hearing upon assigning a cause in the order of removal. The court said: "The language of the statute indicates that it did not intend to require charges and a hearing. It is not to be at the discretion of the board, for cause shown, which might have implied that there should be a hearing and adjudication, but it is to be for such cause as the board shall deem sufficient, and this does not seem to contemplate a formal adjudication." *People ex rel. Gere* v. *Whitlock,* 92 N. Y. 191, involved the summary removal of a commissioner of police by the mayor of a city under a statute authorizing removal "for any cause deemed sufficient to himself" (the mayor). The court sustained the removal upon the ground that the statute did not provide for a hearing, and that the question of sufficient cause was one for the mayor to decide. "It may or may not exist," said the court, "except in his imagination, but his conclusion is final." In *State ex rel. Kennedy* v. *McGarry,* 21 Wis. 502, it was ruled

that the grant of power to remove "for incompetency, improper conduct, or other cause satisfactory to the board" of supervisors, authorized such removal in an *ex parte* proceeding without notice or hearing to the person affected, providing only that the removal was for one of the causes specified, or other like cause. In other words, the court ruled that to give the supervisors jurisdiction, the removal must have been for one of the causes specified, but that the power to determine the existence of such a cause was vested exclusively in the board, whose decision upon the facts were beyond the review of the courts. Many other cases might be cited, but we do not deem it necessary.

In the present case the statute prescribes that the removal shall be for good cause. If it stopped there, a different case would be presented; but, unfortunately for the appellant's contention, it does not. The determination of the question whether good cause exists is expressly vested in the Secretary, and this, we think, authorizes summary removal. This ruling is not only fully sustained by the cases previously cited, but it gives expression to the intent of Congress. The general provisions of this Act show that Congress was fearful that the valuable property rights of these Indians might be encroached upon by designing persons, and therefore imposed upon the Secretary of the Interior the duty of general supervision over the affairs of the tribe. While the tribe was authorized to elect officers, the acts of those officers were to be carefully scrutinized by the Secretary, and if, at any time, he should become satisfied that good cause existed for the removal of those officers, or any of them, he was authorized to put his judgment into immediate execution. This was obviously in the interests of the tribe. As appellant accepted his office upon these conditions, he is without standing here to complain that the Secretary has exercised the authority with which he is clothed by law.

The judgment will therefore be affirmed, with costs.

*Affirmed.*

A motion for a writ of error to the Supreme Court of the

United States was denied June 5, 1913; a motion to stay
mandate was overruled June 5, 1913.