## UNITED STATES v. KO SAI CHEUNG.

(Circuit Court of Appeals, Eighth Circuit. April 24, 1922.)

### No. 5745.

Aliens ☞32(I)—Deportation for violation of Chinese Exclusion Act only after judicial hearing.

Immigration Act, § 19 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼jj), does not authorize deportation of a Chinese citizen for violation of the Chinese Exclusion Act without a judicial hearing in accordance with the requirements of that act, as provided in Act Sept. 13, 1888, § 13 (Comp. St. § 4313).

Van Valkenburgh, District Judge, dissenting.

Appeal from the District Court of the United States for the Eastern District of Missouri; Jacob Trieber, Judge.

Habeas corpus by Ko Sai Cheung against the United States. From an order discharging petitioner, the United States appeals. Affirmed.

Eustace C. Wheeler, Asst. U. S. Atty., of St. Louis, Mo. (James E. Carroll, U. S. Atty., of St. Louis, Mo., on the brief), for the United States.

Byron F. Babbitt, of St. Louis, Mo. (Albert W. Johnson, of St. Louis, Mo., on the brief), for appellee.

Before SANBORN and LEWIS, Circuit Judges, and VAN VALKENBURGH, District Judge.

LEWIS, Circuit Judge. This is an appeal from an order discharging appellee on writ of habeas corpus. At the time the writ issued he was being held for deportation on a warrant issued by the Secretary of Labor. There is no doubt that appellee had been a member of a wholesale mercantile firm in China, that before coming here he obtained a merchant's certificate under section 6 of the Chinese

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Exclusion Act (Comp. St. § 4293), and that it was regularly issued. It was produced at the trial. By virtue of·it he landed at San Francisco in December, 1917, and within a month thereafter went to St. Louis, where he was later taken into custody and given a hearing before an immigration inspector on the charge contained in the warrant of arrest, that he had been found within the United States in violation of section 6 of the Chinese Exclusion Act, having fraudulently procured the certificate under that section and having become a laborer since admission. The inspector held that the evidence supported the charge, and it was repeated in the deportation warrant under which he was being held when the writ was sued out.

The question presented to us is, whether a Chinese, a citizen of China, charged with violation of the Chinese Exclusion Act (Comp. St. § 4290 et seq.), can be deported without being given a judicial hearing in accordance with the requirements of that act (Comp. St. § 4313). The Supreme Court, in Woo Jan's Case, 245 U. S. 552, 38 Sup. Ct. 207, 62 L. Ed. 466, answered the question in the negative. There the proceeding was on executive order and inquiry under the Immigration Act of February 20, 1907 (34 Stat. 898), for violation of the Chinese Exclusion Act, and the court held the executive order to be void. Here executive action was taken against appellee in claimed compliance with the Immigration Act of February 5, 1917 (39 Stat. 874 [Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 959, 960, 4289¼a–4289¼u), for violation of the Chinese Exclusion Act; and on that it is argued that although the Act of 1907 did not take away the right to a judicial hearing, that of 1917 does—hence the Woo Jan Case does not control. The argument is ·this: Both acts provided (section 21 of the Act of 1907 and section 19 of the Act of 1917) that any alien might be deported by executive action who was found in the United States in violation "of any (other) law of the United States," but that the Act of 1907 only provided (section 43) "that this act shall not be construed to repeal, alter, or amend existing laws relating to the immigration or exclusion of Chinese persons or persons of Chinese descent"; whereas the later act, in its thirty-eighth section (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼u). added this to the language of the prior act just quoted: "except as provided in section 19 hereof"; and that this amendment of the Immigration Act subjected appellee to the procedure adopted. One might expect on casually reading section 38 of the later act with the amending clause just quoted to find in section 19 language, appropriate for the purpose, expressly repealing some part or parts, or section or sections, of the Chinese Exclusion Act, but no such language can be found. A more careful reading would hardly raise that expectation, for the clause is not apt to that purpose; else it would have run, *except in so far as said act is repealed, altered or amended by section 19 hereof.* Section 19 ·does not expressly repeal, alter or amend the Chinese Exclusion Act; so that if the contention is sustained, it must be on the ground that what is found in section 19 repeals, alters or amends the Exclusion Act, to the extent claim-

ed, by implication. If it was the purpose of Congress to repeal all parts of the Chinese Exclusion Act which provided for a judicial hearing, why did it not expressly say so? That could have been done easily and unmistakably, and in shorter and more simple terms than we find in section 38. Or it could have declared the same thing in clear, direct terms in section 19. But it did neither. And it must have known, as said in the Woo Jan Case, that—

"The remedies are too essentially different to be concurrent. * * * And there can be no doubt of the result if such decision be made. The summary and direct remedy of section 21 will always be used. No Chinese person will be given the formal procedure of the exclusion laws with their safeguards."

We cannot assume that the language used was selected to create a doubt of the legislative purpose, but rather that the doubt, if any, is engendered from the effort to construe it for the purpose not intended, that is, to withdraw the right to a judicial hearing expressly given by the Exclusion Act. We come to a consideration of section 19 (Act of 1917 [Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼jj]), in the light of familiar and settled rules of construction. Its broad purpose is to vest power in the Secretary of Labor to deport aliens after executive inquiry under the conditions and circumstances named in it. The particular contingency relied upon here is that the power is given when an alien shall have entered, or shall be found in the United States, "in violation of any other law of the United States"; but the same quoted clause, omitting the word "other," was used in the same connection in the Act of 1907 passed upon in the Woo Jan Case. The section proceeds at length with a list of prohibited acts on commission of which the power given may be exerted; among others we find these:

"Any alien who is hereafter sentenced to imprisonment for a term of one year or more because of conviction in this country of a crime involving moral turpitude," which is a "violation [in part at least] of any other law of the United States"; "or who is hereafter sentenced more than once to such a term of imprisonment because of conviction in this country of any crime involving moral turpitude committed at any time after entry," which likewise is a "violation of any other law of the United States."

The section specifies other acts which may be committed by a Chinese, as well as by others, subjecting him to deportation by executive procedure, none of which, however, were charged against appellee. Applicable rules of construction to be applied may be found in Lewis' Sutherland, Statutory Construction (2d Ed.) vol. 1, § 247 et seq. That an implied repeal results from some enactment the terms and necessary operation of which cannot be harmonized with the terms and necessary effect of an earlier act, that repeals by implication are not favored, that it is the duty of the court to so construe the acts, if possible, that both shall be operative, that where there is a difference in the whole purview of two statutes, apparently relating to the same subject, the former is not repealed, that if by a fair and reasonable interpretation acts which are seemingly incompatible or contradictory may be enforced and made to operate in harmony without absurdity, both will be upheld, and the later one will not be regarded as repeal-

ing the others by construction or intendment, that where two acts deal with different subjects the rule is rarely applied, and that it must be presumed that the Legislature in passing a statute did not intend to interfere with or abrogate any prior law relating to the same matter, where it has not expressly done so, unless the repugnancy between the two is irreconcilable.

It was shown that appellee entered in strict conformity with the Exclusion Act, so the last proviso to section 19 does not help appellant, for the record of "conviction of a crime involving moral turpitude in violation of any other law of the United States" would make a prima facie case against an alien's right to remain.

Our conclusion is that the two acts can be harmonized so as to give effect to both, that a Chinese person may be deported on executive order when his case comes within the specific terms of the Act of 1917, that it was not the intention of Congress to repeal, alter or amend the Chinese Exclusion Act in so far as it makes provision for a judicial hearing on a charge of violation of its terms, and that the court ruled rightly when it held that appellee could not be deported by executive order.

VAN VALKENBURGH, District Judge (dissenting). I am unable to concur in the conclusion reached by my Associates, and the matter involved is of such importance that I deem it necessary to state the ground of my dissent.

The petitioner in this case appears to have procured from the designated officer what is known as a "section 6 certificate" for entrance into the United States under the acts to execute certain treaty stipulations relating to Chinese commonly known as the Chinese Exclusion Acts. This certificate was officially verified by the consul general of the United States at Hong Kong, and was received and canceled by the Commissioner of Immigration at the port of San Francisco. It appears that the petitioner was admitted upon this certificate on or about December 18, 1917. On May 1, 1918, the acting Secretary of Labor issued his order that the petitioner be granted a hearing under the immigration laws to enable him to show cause why he should not be deported upon the charge that he had been found within the United States in violation of section 6 of the Chinese Exclusion Act of May 5, 1892, as amended by the Act of November 3, 1893 (Comp. St. § 4320), being a Chinese laborer not in possession of a certificate of residence, and found within the United States in violation of section 6 of the Chinese Exclusion Act of July 5, 1884 (Comp. St. § 4293), having secured admission on a fraudulently procured certificate, and was found within the United States in violation of section 6 of the same act, because of having secured admission on a certificate issued under the said section, but having become a laborer since admission contrary to the provisions and intendment of said act. It will be seen that the charges upon which the deportation was urged were violations of the various Chinese Exclusion Acts passed in execution of the treaty stipulations between this country and China, approved May 6, 1882 (22 Stat. 58).

Petitioner sued out his writ of habeas corpus upon the ground that the Immigration Act has no application to a case of this nature, but that the same falls exclusively within the terms of the Chinese Exclusion Acts, under whose provisions the petitioner is entitled to a judicial hearing instead of a summary hearing before administrative officers, as provided by the Immigration Act. The trial court sustained the application and discharged the petitioner, from which ruling the government appeals. The evidence disclosed by the record shows that one Kong Tuck, owner of On Kee Laundry, had employed the petitioner for three months in his laundry, for which he paid him, according to the work done, from $8 to $12 per week; that he lived at the laundry in the meantime and had but small personal baggage. On April 30, 1918, the petitioner made a statement to the immigration inspector, in which he said that he had no occupation, but was looking for a location; that he had been in the United States before, and had lived here for 14 years; that he came to the United States 20 years ago; that upon his arrival at San Francisco he stayed there a little over 2 months, then came to St. Louis, where he had been 9 weeks; that he had been helping his brother Ko Ho in the latter's laundry in St. Louis; that he had been doing this for a little over a week, and had done no other work in St. Louis; that he was a mechant in Hong Kong, and owned $500 worth of stock in the Quong Tuey Wah Company; that during the 14 years he lived in the United States he worked in a cannery in Portland, Or.

At a subsequent hearing, January 14, 1919, before the immigrant inspector, at which hearing he was represented by counsel, as provided by law, he stated that his occupation was that of a merchant with the Lun Sing Company in St. Louis, that he had been a member of that company for 2 months, that he came to the United States in December, 1917, and that this was the first time he ever landed in the United States. His explanation of his former conflicting testimony on this point was that he was confused and made a wrong statement. He produced his section 6 certificate, said he was three weeks in San Francisco, and arrived in St. Louis January 8, 1918; that after arriving in St. Louis he did nothing, but merely waited for an opportunity to join the Lun Sing Company; . that he had not done any manual labor since coming to St. Louis; that he had been a merchant 4 or 5 years in China before coming to the United States; that he had done no labor in a laundry since arriving in St. Louis; that he was paid no salary by Kong Tuck, but was ironing his own clothes when the inspector came; that he had $500 when he came to St. Louis, and that he had invested $800 in the Lun Sing Company, $300 of which he borrowed from kinsmen. The Chinese interpreter testified that, when he entered the Kong Tuck laundry, the petitioner was ironing a shirt.

Lang Gee, offered as a witness in behalf of the alien, stated that he was in the grocery business; that he had known the petitioner for about 20 years in Hong Kong; that the petitioner owns an interest in the Lun Sing Company, which he bought on January 4, 1919, for $800; that the petitioner had been living for the past 20 years in

Hong Kong. The inspector found that the petitioner was a laborer and had never engaged in the business of a merchant in this country, that the certificate was procured for a fraudulent purpose and that the charges were sustained, and recommended the issuance of an order of deportation. The District Court found that there was substantial evidence warranting the findings of fact made, and approved those findings; but the court, being of opinion that the deportation can only be made under the Chinese Exclusion Acts, and that the immigration of 1917 does not apply, sustained the petition, and discharged the petitioner.

The case turns upon the interpretation of the law as it now exists. There can be little doubt that the findings of the immigration officers and of the trial court are sustained by the record. The petitioner admittedly made conflicting statements, which destroy the probative effect of his testimony. He made these statements with an evident reliance upon the advantage which might accrue to him as a merchant of prior residence in the United States, a status which is discussed and considered in Supreme Court decisions. White v. Chin Fong, 253 U. S. 90, 40 Sup. Ct. 449, 64 L. Ed. 797. It must be conceded that, prior to the amendment of February 5, 1917, the contention of the petitioner was sound, as authoritatively ruled by the Supreme Court in United States et al. v. Woo Jan, 245 U. S. 552, 38 Sup. Ct. 207, 62 L. Ed. 466. We have to consider what change, if any, was made in the status of the petitioner by the amendment. The Woo Jan Case was decided under the Act of February 20, 1907. Section 21 of that act contained this provision:

"That in case the Secretary of Commerce and Labor shall be satisfied that an alien has been found in the United States in violation of this act, or that an alien is subject to deportation under the provisions of this act or of any law of the United States, he shall cause such alien within the period of three years after landing or entry therein to be taken into custody and returned to the country whence he came, as provided by section twenty of this act," etc.

Section 43 of the same act expressly provided:

"That this act shall not be construed to repeal, alter, or amend existing laws relating to the immigration or exclusion of Chinese persons or persons of Chinese descent."

Under this act, as it then stood, a Chinaman was apprehended for deportation, and the contention was made in his behalf that, inasmuch as Chinese immigration was comprehensively provided for in the Chinese Exclusion Acts, the act in question did not include Chinese under the term "alien." The case came to the Supreme Court under the title United States v. Wong You, 223 U. S. 67, 32 Sup. Ct. 195, 56 L. Ed. 354. Mr. Justice Holmes held that Chinese were included under the term "alien." He said:

"By the language of the act any alien that enters the country unlawfully may be summarily deported by order of the Secretary of Commerce and Labor at any time within three years. It seems to us unwarranted to except the Chinese from this liability because there is an earlier more cumbrous proceeding which this partially overlaps. The existence of the earlier laws only indicates the special solicitude of the government to limit the entrance of Chinese. It is the very reverse of a reason for denying to the government a

better remedy against them alone of all the world, now that one has been created in general terms."

But he also said this:

"To allow the immigration act its literal effect does not repeal, alter, or amend the laws relating to the Chinese, as it is provided that it shall not, in section 43."

We have it here decided that Chinese are included and may be summarily deported by order of the Secretary of Commerce and Labor under section 21 of the Act of 1907, but with the further limitation that, under section 43 of the same act, the laws relating to the Chinese, to wit, the Chinese Exclusion Acts, were not repealed, altered or amended thereby, which said Chinese Exclusion Acts provided for a judicial instead of a summary hearing; and in the later case of United States v. Woo Jan, as we have seen, the Supreme Court, in an opinion by Mr. Justice McKenna, distinguished the Wong You Case, and held that under this same Act of 1907, with the limiting provision of section 43, a Chinese person must be given a judicial hearing as provided by the Chinese Exclusion Acts. The Woo Jan Case was not decided until January, 1918. The case arose, as before stated, under the Act of 1907. Meantime, on February 5, 1917 (the latter the date of approval), Congress passed an act amending the Act of 1907. Section 19 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼jj) takes the place of section 21 in the former act and provides:

"That at any time within five years after entry, any alien who at the time of entry was a member of one or more of the classes excluded by law; any alien who shall have entered or who shall be found in the United States in violation of this act, or in violation of any other law of the United States" may be summarily deported.

The amendment adds to such aliens "found" in the United States in violation of the act those who shall have "entered" in violation of the act. Section 38 of the latter act (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼u) takes the place of section 43 of the Act of 1907, and says:

"That this Act shall not be construed to repeal, alter, or amend existing laws relating to the immigration or exclusion of Chinese persons or persons of Chinese descent, except as provided in section nineteen hereof."

· It therefore still preserves in full force and effect all of the manifold provisions of the Chinese Exclusion Acts, except as to the method of deportation and the character of persons subject to such deportation. The third proviso of section 19 makes this clear:

"That the provisions of this section, with the exceptions hereinbefore noted. shall be applicable to the classes of aliens therein mentioned irrespective of the time of their entry into the United States."

That is to say, the application embraces not only those about to enter, but those who have entered theretofore and are found in the United States, provided either the entry or their present status is in violation of any law of the United States, including the Chinese Exclusion Acts. This seems to be the evident purpose of the legisla-

tion; but it is claimed to be ambiguous, and particularly so in view of some expressions to be found in the opinions of the courts, notably the Supreme Court of the United States in dealing with these matters. For example, in the case of White v. Chin Fong, 253 U. S. 92, 40 Sup. Ct. 450, 64 L. Ed. 797, the court said:

"In the case of United States v. Woo Jan, 245 U. S. 552, we had occasion to consider the difference between the situation of a Chinese person in the United States, and one seeking to enter it, and held that the former was entitled to a judicial inquiry and determination of his rights, and that the latter was subject to executive action and decision. We think the distinction is applicable here, and that one who has been in the United States and has departed from it with the intention of returning, is entitled under existing legislation to have his rights to do so judicially investigated with 'its assurances and sanctions,' as contrasted with the discretion which may prompt or the latitude of judgment which may be exercised in executive action."

This case, while decided May 17, 1920, gave no consideration whatever to the Act of February, 1917, but specifically cites and construes other acts of a much earlier date. It does not, and does not purport to, pass upon the point here in controversy, nor was this question necessarily nor actually before it. Reference is made to the doctrine announced in Chin Fong v. Backus, 241 U. S. 1, 36 Sup. Ct. 490, 60 L. Ed. 859, a case decided in 1916, before the enactment of the law now under consideration.

To meet the situation disclosed by the decision in the Wong You Case, 223 U. S. 67, 32 Sup. Ct. 195, 56 L. Ed. 354, Congress passed the Act of February 5, 1917; and, in view of the disagreement which has arisen as to the meaning of this act, it seems not only proper, but necessary, to refer to the committee reports upon which Congress acted in passing the later law. The proceedings in Congress incident to the passage of the Immigration Act of 1917 (S. Rept. No. 352, 64th Cong., 1st Sess.) contain the following:

"The phrase 'or in violation of any other law of the United States' has reference to the Chinese Exclusion Laws. Its object is to make perfectly clear * * * the intent to continue the practice established under that act (the Act of 1907) and since approved in a number of court decisions, including the decision of the Supreme Court in the Wong You Case, 223 U. S. 67, 32 Sup. Ct. 195, 56 L. Ed. 354, of expelling aliens who enter or are found here in violation of the Chinese Exclusion Laws, adapting the administrative process of the Immigration Act to that class of cases wherever the proceedings are instituted within the period of limitation specified therein."

Nothing can be clearer than that it was the express purpose of Congress to make effective the interpretation contained in that part of the court's opinion in the Wong You Case which held that Chinese were included within the terms of this act and might be dealt with summarily; an interpretation which was clouded by the pronouncement which followed to the effect that by the terms of section 43 the Chinese Exclusion Laws were in no respect repealed, altered or amended. It is true that the Woo Jan decision, which had already been handed down, was not mentioned. It may not have been called to the attention of Congress; but if it had been, the purpose of Congress, as herein plainly expressed, would obviously have been the same. If nothing more had been said in the amendatory act than

is to be found in section 19 thereof, we might still be left in the same position in which the Woo Jan decision placed us; but Congress did not stop there. In the new section 38 it added the express purpose to repeal which had been specifically mentioned as being absent from and disclaimed in section 43; and it takes no careful reading of the Woo Jan Case to disclose that the Supreme Court placed its ruling in that case almost entirely upon the disclaimer of section 43 of the intention to repeal, alter, or amend. The purpose of Congress, as gathered from that clause in section 43, is several times referred to, and finally the statement is expressly made that the procedure under the exclusion laws is "saved" by section 43.

While it is true that repeals by implication are not favored, nevertheless where the same subject-matter is covered by two acts which cannot be harmonized with a view to giving effect to the provisions of both of them, to the extent of the repugnancy between them, the prior act is impliedly repealed, particularly in cases where it is apparent that the latter act is intended to provide an exclusive rule of law. Whether or not an act is impliedly repealed is a question of legislative intention, to be ascertained by an examination of both statutes, in the light of the reason, purpose, and object of both. Encyc. of U. S. Supreme Court Reports, vol. 11, pp. 94–100; Barney v. Dolph, 97 U. S. 652–656, 24 L. Ed. 1063; Eckloff v. District of Columbia, 135 U. S. 243, 10 Sup. Ct. 752, 34 L. Ed. 120; McChord v. Louisville, etc., R. Co., 183 U. S. 483–499, 22 Sup. Ct. 165, 46 L. Ed. 289.

Comparing section 19 of the Act of 1917 with section 21 of the Act of 1907, it is apparent that the former is largely an amplification of the latter, intended to make the grounds for deportation more specific and certain and extending the period of limitation from three to five years. It is significant that by the later act the operation of law is extended to aliens who shall have entered in violation of this or any other law of the United States as well as to those found in the United States in violation of law. Section 38 repeals the Chinese Exclusion Acts in so far as they are in conflict with, or inconsistent with, the provisions of section 19. This is the natural meaning of the language used read in the light of the reason, purpose, and object of the legislation. The treaty between China and the United States, of course, specifies no form of procedure for deportation. It was within the power of Congress to prescribe any reasonable method, and it was equally within its power to substitute another method for one theretofore prescribed. Evidently, from experience, Congress deemed the earlier proceeding to be more cumbrous," as was said in the Wong You Case, and desired to create what that case describes as "a better remedy." This is expressly stated in the committee report which has been quoted. Its object was:

"To make perfectly clear * * * the intent to continue the practice established under that act (the Act of 1907) * * * of expelling aliens who enter or are found here in violation of the Chinese Exclusion Laws, adapting the administrative process of the Immigration Act to that class of cases wherever the proceedings are instituted within the period of limitation specified therein."

This was the main if not the only object of the amendment of 1917. The Supreme Court has said in the Woo Jan Case that "the remedies are too essentially different to be concurrent"; that "the universality of the declaration (in the Act of 1907) would seem to preclude exception and compel a single judgment." The court then passes on to section 43 of the Act of 1907 and holds that the procedure prescribed in the Exclusion Laws is "saved" by the express disclaimer in this paragraph of any purpose to repeal, alter or amend existing laws relating to the immigration or exclusion of Chinese persons or persons of Chinese descent. It is obvious then that the Supreme Court regarded the Act of 1907 as sufficient in terms to operate as a repeal by implication of the Chinese Exclusion Acts in the particular under discussion, and that such logically must have been its decision in the absence of the saving clause in section 43. It was avowedly to meet this interpretation and make clear the intent and purpose of Congress that the Act of 1917 was passed, and this Congress did by inserting, in section 38 of the new law, the repealing provision which was absent from, and expressly excluded by, the language of section 43, which the court had said saved the procedure of the Exclusion Acts from the necessary effect of the provisions of the Act of 1907. Congress could, of course, have used more explicit phraseology, but in the light of what had gone before no more was necessary to make its purpose clearly understood.

I have no doubt of the purpose of Congress to substitute the more summary proceeding for cases like the one at bar, nor that existing legislation meets the criticism heretofore interposed by the Supreme Court. I find it unnecessary, therefore, to refer to contemporaneous and later decisions in District Courts and in Circuit Courts of Appeal. I share the feeling, voiced generally by courts, in favor of judicial hearings with their greater safeguards and sanctions, but I realize that aliens primarily are subject to disposition by the political authorities, and that if the purpose of the Legislature is clear, the courts cannot, and should not, do otherwise than execute its mandate.

It follows, in my opinion, that the judgment below should be reversed, with directions that the writ be discharged.