THE PEOPLE *ex rel.* THE ATTORNEY GENERAL *v.* HILL.

A law which provides that an officer may be removed in a certain way, or for a certain cause, does not restrain or limit the power of removal to the cause or manner indicated.

The power to remove is an incident to the power to appoint, as a general proposition, and is made so expressly by the Constitution.

The only way in which this power of removal can be limited, is by first fixing the duration or term of office, and then providing the mode, if deemed necessary, by which the officer may be removed during the term.

*It seems* that a law, providing that a party shall not be removed from office, except in a given case, where the duration of the office is not declared, would be unconstitutional.

There is no constitutional inhibition against incorporating a portion of the inhabitants of a county as a city, or creating a county out of the territory of a city.

As a city may, by legislative enactment, spring from the body of a county, there is no reason in law why it may not be resolved back into its original elements, or why the power which called this political being into existence, may not again destroy.

*It seems* that the act consolidating the city and county of San Francisco is not unconstitutional.

An error in the act which defeats the first election held under it in that portion of the original county excluded from the consolidation, is not of itself sufficient to warrant a decision that the whole act is unconstitutional, especially when the Legislature is in session to remedy the defect.

The Legislature has the power so to change the "Assembly Districts," as to join two counties in one district.

APPEAL from the District Court of the Twelfth Judicial District.

This was an information, in the nature of a *quo warranto*, against the defendant, for usurping the office of captain of police of the city and county of San Francisco.

The bill sets forth, that R. B. Monks was appointed captain of police, July, 1, 1856, by the unanimous vote of the president of the board of supervisors, the police judge, and the chief of police, of the city and county of San Francisco, and received a due certificate of his appointment, signed by those officers; that James McElroy, the chief of police, became so by operation of law, having been marshal of the city, under its charter, up to July 1, 1856, when the Consolidation Law went into effect; that on December 2, 1856, Monks received a notice of dismissal, signed by the newly elected president of the board of supervisors, police judge, and chief of police, who thereupon appointed the defendant, John Hill, to the office of captain of police, in place of Monks.

The bill further sets forth, that no charges of negligence or malfeasance in office were ever made against Monks.

The defendant demurred to the bill. The Court below sustained the demurrer, and entered judgment for the defendant, from which, an appeal was taken on behalf of the people.

*Gregory Yale* for Appellant.

The appellant makes the following points:

1. The power of removal is not incidental to the power of appointment, where there is either a limitation of the term, or a mode of removal pointed out by law.

2. The appointment of Monks, as set forth in the information, was within the sixth section of the eleventh article of the Constitution, and the mode of removal prescribed by the Consolidation Act necessarily entered into and was part of the form of appointment.

3. If, as decided by the District Court, the sections of the Consolidation Act, relating to the removal of police captains, is unconstitutional, then the whole bill is unconstitutional, and the officers who made the removal are incompetent to act.

1. The office of police officer is not one known to the common law, it is created by statute, and must be regulated and administered according to the statute. Commonwealth v. Dugan, 12 Met., 234.

2. By the general statutory law of the State, "the organization and regulation of the police in cities and towns in this State are governed by special laws." § 34, Act May 1, 1851; Comp. Laws, 427.

3. The reduction of the police force, under section six of the schedule to thirty, and the appointment of four captains by the president of the board of supervisors, the police judge, and the chief of police, in July, 1856, amounted to a reorganization of the police force under that act.

4. The power of removal of police captains is controlled by section twenty-five of the Consolidation Act, and the regulations which were made in pursuance thereto; and in the absence of any regulations on the 2d of December, 1856, the ordinance referred to in the information, passed under the charter of 1855, was in force, and removals could only be made for cause, as therein provided.

5. The power of removal is not incidental to the power of appointment, when there is either a limitation of the term, or a mode of removal pointed out by law. 17 How., 307–8; 13 Pet., 259; Marbury v. Madison, 1 Cranch, J., 162; ib., 163; People v. Coleman, 4 Cal. 49; Jewett's case, July Term, 1856, (Cal. R., 291); Page v. Hardin, 8 B. Monroe, 672; People v. Carrique, 2 Hill, 104; The Commonwealth *ex rel.* Lehman v. Sutherland, 3 Rawle, 146; 5 S. & M., 648.

In support of the third point filed by appellants, the following provisions of the Constitution are referred to:

As to the exercise of the right of suffrage in counties, Art. II, § 1.

Election and qualification of members of the Assembly and Senators, Art. IV, §§ 3, 4, 5.

As to county organizations, Art. VI, §§ 7, 8, 14, 15; Art. XI, §§ 4, 15, 13; schedule, § 14.

As to organization of city government, Art. XI, § 9; Art. IV, §§ 31, 37; Art. VI, § 1.

As to the general character of county government, Hunsacker v. Borden, July Term, 1855; Jackson v. Hartnell, 8 John., 425; Washington v. The State, 13 Ark., 761; Scott v. The State, 17 Mo., 528.

As to town government, Angell & Ames 14, 19; 2 Kent, 274; Territ v. Taylor, 9 Cranch, 52; Janson v. Ostrander, 1 Cowen, 680; 38 Maine, 41; People v. Gany, 1 Cowen, 640.

As to municipal or city governments, 2 Kent, 304, 352; People v. Maynard, 14 Ill. 422; Touchard v. Touchard, July Term, 1855; Love v. Mayville, ib.; State v. Field, 17 Mo.

Municipal or city governments continued, more especially in reference to the city and county of New York, showing the distinction between the two local governments. People v. Morris, 13 Wend. 330; People v. Edmunds, 15 Barb.; Milham v. Sharp, ib. 194; People v. Purdy, 2 Hill, 31; James T. Brady v. Supervisors, 2 Saundford, 469; People v. Flagg, 16 Barb., 503; J. T. Brady v. The City of New York, 1 Sand.; Halstead v. The Mayor, etc., of New York, 3 Comstock, 430; People v. Purdy, 4 Hill, 416–18.

That the entire law is void, 13 Ark., 751, Washington v. The State; Second Municipality v. Morgan, 1 La. An. 116.

Including the repealing clause, 11 Ark., 501; Eason v. The State.

As to the question of representation under the act, the San Mateo County case, Dec. Term, 1856; Warren v. The Aldermen, etc., v. Gray, Opinion of the Supreme Judges, 6 Cush. (Mass.), 582; De Camp v. Eveland, 19 Barb., 90; Opinions of the Judges, 33 Maine, 588; Scott v. The State, 17 Mo., 528.

Population is the basis of representation. Assembly districts can only be composed of two conuties when one is deficient in population, otherwise ten counties could be made into Assembly districts, or all the counties in the State. This act does not establish San Francisco and San Mateo into one district. There is but one Assembly district in the State, under the constitutional divisions—Colusi and Sutter counties.

The act of 1850, relating to unorganized counties referred to, is itself unconstitutional, within the principle of the case of Dickey v. Hulbert, July Term, 1855.

*Crockett & Page* for respondents.

1. That the office of police captain is not limited in duration; and the appointment being conferred by law, on the police judge, chief of police and president of the board of supervisors, they have the right under the Constitution to remove at pleasure; and if the Consolidation Act be construed as denying the right to

remove except for cause, this limitation on the power of removal is unconstitutional. Art. XI, § 7; People *ex rel.* etc., *v.* Finley 5 Cal. R. 139; People *v.* Comptroller, 20 Wend., 597.

2. That the Consolidation Act does not expressly or by implication deny to the officers aforesaid the right to remove a police captain at pleasure. The twenty-fifth section provides for their removal, for official negligence, inefficiency or misconduct, "under such general rules and regulations, not contrary to law, as may have been established by the board of supervisors." This power is only cumulative, and contemplates that for the purpose of investigating charges against policemen, the board of supervisors will establish some general regulations for the convenience of such proceedings. But the act in this respect is only directory, and a failure on the part of the board of supervisors to establish such general rules surely could not have the effect to keep in office an incompetent policeman, in defiance of those who appointed him, and who must judge of his fitness for the office. The twenty-eighth section provides that any private citizen may prefer charges under oath, against a policeman, which shall be considered and decided by the police judge, chief of police and president of the board of supervisors. This was manifestly designed to secure to any citizen the right to prefer charges and have them decided, and was not intended for the benefit of policemen; but, on the contrary, rendered him liable to be proceeded against, whenever any private citizen felt himself aggrieved by his conduct. The last clause of the same section provides that any officer appointed or elected under the Consolidation Act may be removed from office in the mode prescribed by law. The Constitution, which is the highest law, provides that where the duration of the office is not defined by law, the officer may be removed by the appointing power at pleasure, and the clause above quoted is but a recognition of this power.

3. It is claimed on behalf of the appellants that the Consolidation Act is unconstitutional and void. If this be granted, for the sake of the argument, it must be fatal to the appellants' cause. They were appointed to office under and in virtue of the same act and not otherwise, and of course, if the act is void, they were never legally in office. But they attempt to escape this result on the plea that the police judge and chief of police who appointed them, were in office under the former city charter, though called by different names, to wit: Recorder and Marshal. The reply to this is two-fold, to wit: First, That the Consolidation Act repeals, in express terms, the former charter, and the repealing clause is valid, even though the remainder of the act be unconstitutional. Second, The charter of 1855, even if it remained in force, did not authorize the marshal and recorder to appoint policemen, but conferred that power on the mayor, presidents of the two boards of aldermen, and marshal. (See

section 35 of the charter of 1855.) It is most evident, therefore, that if the Consolidation Act is unconstitutional, the relators never were in office.

4. We maintain the Consolidation Act is not unconstitutional. We submit, there is nothing in the Constitution to prohibit the Legislature from making the boundaries of a city coterminous with those of a county; nor from imposing on county officers the performance of other duties than those which ordinarily belong to them.

We think, most clearly, that the Consolidation Act does not attempt to abolish the county of San Francisco, nor its county government. On the contrary, it expressly provides for the election of all constitutional county officers, and in no respect abridges their powers; nor does it in express terms, or by implication, attempt to abolish the county, or deny to it any constitutional right.

The Constitution, Art. XI, § 4, requires the Legislature to provide a system of town and county governments, which, as nearly as practicable, shall be uniform throughout the State; but the Legislature is to judge of the propriety of such enactments; and if this Court were to attempt to control the legislative discretion in this respect, it would deny to the Legislature the right to decide for itself in respect to a matter which is purely legislative, and not judicial in its character. The provision quoted above, is, at most, only directory, and if the Legislature fail to perform its duty in respect to the establishment of a uniform system of town and county governments, the remedy is through the ballot-box, and not by an appeal to the Courts. People *v.* Coleman, 4 Cal. R. 46.

We proceed now to consider the last objection which is urged against the constitutionality of this act, to wit: that which relates to the defective provision for the election of county officers in San Mateo county. The only authority cited by the defendant on this point is, the case of Warren *v.* Mayor and Aldermen of Charlestown, 2 Gray's R., 84, which turned chiefly upon the Constitution and statutes of Massachusetts.

It will be observed, that our act undertakes to do precisely the reverse of what was attempted in the Massachusetts case; to wit, to divide our county into two, and not to unite two separate and distinct corporations into one. Nor is it claimed that the people of San Mateo county are deprived of their right of representation, as were the people of Charlestown in the other case. On the contrary, in respect to the exercise of the right of suffrage for all political officers, the people of San Mateo are wholly unaffected by the act, and are entitled to vote, and be represented, precisely in the same manner as before the passage of the act. See schedule, § 9, subdivision 20.

But if the act were unconstitutional, so far as it is supposed

to deprive San Mateo of county officers, it would not, for that cause, be void so far as relates to this county.

In the Boston case, the Court decided that so much of the act as simply united the two corporations into one was void, solely on the ground that under the laws of that State, the Legislature could not divide a Senatorial District, except at stated periods. Except for this provision, the Court would have decided that the act was constitutional, so far as it changed the boundaries of the two cities and united them into one.

We invite the attention of the Court to the latter part of the decision in the Boston case, and we insist on the principle there settled, that so much of our act as erects San Mateo into a new county is constitutional, and if other provisions of the act in respect to the new county are in violation of the Constitution, it does not follow that the whole is void.

MURRAY, C. J., delivered the opinion of the Court—BURNETT, J., concurring.

Two propositions are involved in this case : First, the authority of the appointing power to remove an officer, when the term of the office is not fixed by law; and, Second, the constitutionality of the act consolidating the city and county governments of San Francisco.

The Constitution of this State, section 7, Article XI., provides, " when the duration of any office is not provided for by this Constitution, it may be declared by law, and if not so declared, it shall be held during the pleasure of the authority making the appointment; nor shall the duration of any office, not fixed by this Constitution, ever exceed four years."

By a reference to lexicographers, it will be found that the word "duration" signifies "extent," "limit," or "time." When therefore, the time of holding is not fixed, the tenure of the office is at the pleasure of the appointing power. This power of removal cannot be divested or taken away, except by limiting the term.

A law which provides that an officer may be removed in a certain way, or for a certain cause, does not restrain or limit the power of removal to the cause or manner so indicated. The power to remove is an incident to the power to appoint, as a general proposition, and is made so expressly by the Constitution.

The only way in which this power of removal can be limited is by first fixing the duration or term of office, and then providing the mode, if deemed necessary, by which the officer may be removed during the term. A law which simply provides that a party shall not be removed, except in a given case, where the duration of the office is not declared, would, in our opinion, be unconstitutional.

Having disposed of the first point, we will proceed to consider the question of the constitutionality of the act. In this connection it may be remarked, that if some of the provisions of the bill are unconstitutional, this will not vitiate the whole act, unless they enter so entirely into the scope and design of the law, that it would be impossible to maintain it, without such obnoxious provisions.

It is not our intention to examine the various provisions of this act, to reconcile its apparent incongruities, or to point out those particular provisions that may be obnoxious to constitutional objections, but simply to detemine whether, as a whole, it can be maintained. In this respect, we see no good reason for pronouncing the act void.

The arguments are, mainly: First, that the Consitution distinguishes between city and county governments, and that the two cannot be merged; Second, that, in point of fact, there has been no consolidation of the two governments, as appears by the act itself; and, Third, that, by the provisions of the act, the people of San Mateo county are disfranchised.

On the first point, it may be said that the Constitution has divided, or made provision for dividing, the State, for political purposes, into counties; and has further provided for the organization of towns, cities, etc., for municipal purposes. There is no constititutional inhibition against incorporating a portion of the inhabitants of a county as a city, or creating a county out of the territory of a city; the very necessity of the case both permits and demands it. And as a city may, by legislative enactment, spring from the body of the county, being the first subdivision of the territory and political power of the State, there is no reason in law why it may not be resolved back to its original elements, or why the power that has called this political being into existence may not again destroy it. There is no limitation on the power of the Legislature in this respect, and economy and convenience may often require that an act incorporating a city should be repealed, and the inhabitants thereof placed in their original situation.

It may be well, in this connection, to answer the second objection. The language of the act is somewhat ambiguous, but it was evidently the intention of the Legislature to repeal the act incorporating the city of San Francisco, and to merge the city and county governments into one, as a " county government," under the direction of county officers.

We come now to an examination of the third point, viz. : that the act disfranchises the citizens of San Mateo county.

The first argument in support of this proposition is, that no sufficient provision is made by the act for the election of officers for that county, the election holden under the same having been declared void by this Court. If this were a permanent depriva-

tion of the political privileges of the citizens of that county, and the law furnished no mode of remedying the evil for years to come, we might pause before we decided to uphold this act. But when we take into consideration that the Legislature did attempt to make provision for an election, and that the result was defeated by carelessness or mistake, and that it is now in session, ready to act upon the matter, it would ill beseem us to pronounce the whole law unconstitutional, for a trifling defect so easily remedied.

Again, it is said that the people of San Mateo are disfranchised, because, by the terms of the act, the counties of San Francisco and San Mateo are joined together as an Assembly district. On examination of the Constitution, it will be found that provision is made for " Assembly districts," and there is nothing, that we know of, which would limit the power of the Legislature, in joining two counties as a district, for the election of one or more Assemblymen. It would in some cases be but an act of justice, giving to the inhabitants thereby a full representation; while, on the other hand, it might operate to defeat the choice of one county, by overwhelming it with the majority vote of another.

It is not our province, however, to say what the consequences of such a practice might be. It is sufficient that the Legislature possess the power, and they alone are responsible for its exercise.

The case of Warren v. The Mayor and Aldermen of Charlestown, 2 Gray, 84, has been relied on by the appellant, as sustaining the unconstitutionality of this act. An examination of the case, however, will show that the Constitution and laws of the State of Massachusetts differ essentially from those of California, and that the case is not analogous to the one before us.

There may be some unconstitutional features in the bill, and some provisions which will tax the ingenuity of counsel and Courts to reconcile, but as a whole, we are satisfied that it is not so vitally defective as to warrant us in pronouncing it unconstitutional.

Judgment affirmed.