STATE EX REL. BONNER, GOVERNOR, ET AL., RELATORS, *v.*
DISTRICT COURT OF FIRST JUDICIAL DISTRICT IN
AND FOR LEWIS AND CLARK COUNTY ET AL.,
RESPONDENTS.
No. 8902
Submitted April 26, 1949. Decided May 14, 1949.
206 Pac. (2d) 166

466

Mr. Arnold H. Olsen, Atty. Gen., and Mr. Hugh D. Carmichael, Asst. Atty. Gen., for relators. Both argued orally.

Messrs. Rankin & Acher, of Helena, for respondent. Mr. Rankin argued orally.

Messrs. Loble & Loble, Mr. Don Sullivan, Mr. Robert L. Word, Jr., and Mr. Wesley W. Wertz, all of Helena, amici curiae.

MR. CHIEF JUSTICE ADAIR:

This is an original proceeding to determine title to office brought in the name of the state on the relation of John W. Bonner, as Governor, and Carroll M. Stewart, relators, against Barclay Craighead, the District Court of the First Judicial District of the State of Montana, in and for the County of Lewis and Clark and George W. Padbury, Jr., a Judge thereof, respondents.

This court accepted jurisdiction. Respondents, appearing by counsel, interposed separate motions to quash and, without waiving their rights thereunder, made separate answers and returns and filed briefs. On motion of the respective parties the cause was advanced on the calendar. The facts pleaded are not in dispute. On the hearing counsel confined their respective arguments to their interpretation of the provisions and principles of law involved and the cause was submitted for decision.

In 1937 the Twenty-fifth Legislative Assembly of the State of

Montana enacted the Unemployment Compensation Law, Laws 1937, c. 137, and provided that it "shall take effect and be in force from and after its passage and approval." Sec. 24. The Act was approved on March 16, 1937.

The law created a commission of three members to be appointed by the governor and to be known as the unemployment compensation commission of Montana.

Except as limited by the Constitution, the term of public officers is a matter purely of legislative discretion. "Where not fixed by the constitution, the legislature has the power to fix the commencement of terms of office." 46 C. J., "Officers," sec. 100, p. 965. While this power is vested in the legislature, yet it also has the discretion to determine whether or not to exercise such power.

In the enactment of the Unemployment Compensation Law the 1937 legislature exercised its power to fix therein, for *two* of the commissioners, a definite and fixed term of office and a definite and fixed compensation.

The law provides: "*Two of the members* of the commission shall serve on a per diem basis and shall be paid at the rate of ten dollars ($10.00) per day of service plus actual and necessary expenses * * *." Sec. 10.

The law provides that the terms of office of the *two per diem members* first appointed shall expire "one at the end of three years, the other at the end of six years" and thereafter, "Each per diem member shall hold office for a term of six years, * * *" This expresses the legislative intent that the commission should, at all times, have in its composition at least one experienced per diem member.

In the law the legislative assembly, as was its prerogative, wholly omitted to fix the extent, limit or time that the third member should hold office or to fix his compensation or salary.

The law provides: "*The third member* of the commission, who shall be designated as chairman at the time of his appointment, shall be paid a full-time salary *in an amount to be fixed by the*

*governor* and shall be the executive director." Sec. 10. (Emphasis supplied.)

The legislature has provided in section 422 of the Revised Codes of Montana of 1935 : "Every office of which the duration is not fixed by law is held at the pleasure of the appointing power."

On May 6, 1937, the Honorable Roy E. Ayers, then governor of this state, appointed the respondent, Barclay Craighead, to membership on the unemployment compensation commission and designated him as chairman and executive director thereof. The respondent, Craighead, promptly qualified and entered upon the performance of the duties of the office. Thereafter he continuously occupied the office during the remainder of the four-year term of Governor Ayers and also during the two terms of four years each of Governor S. C. Ford, who succeeded Governor Ayers as Governor.

At the general election held November 2, 1948, the relator John W. Bonner was elected to the office of Governor for the term of four years from January 3, 1949, to January 5, 1953.

On January 3, 1949, the relator Bonner qualified and assumed the office of Governor. Thereafter and on the same date he informed the respondent Craighead that the latter's services on the commission would no longer be required after adjournment of the Thirty-first Legislative Assembly, then in session, and that said relator would then appoint another as chairman and executive director of the commission.

Following the sine die adjournment of the legislative assembly the relator Governor on March 28, 1949, informed the respondent Craighead that his services would not be needed after March 31, 1949, and that from and after the latter date he was removed from office and that the office would be filled and occupied by another under an appointment by the relator Governor.

On March 31, 1949, Governor Bonner issued to relator Carroll M. Stewart a written commission appointing him as a member of the unemployment compensation commission and designating him as chairman thereof effective as of April 1, 1949.

On April 1, 1949, the respondent Craighead, as plaintiff, commenced in the respondent District Court of the First Judicial District of the State of Montana, in and for the County of Lewis and Clark, an action in equity against the relator Carroll M. Stewart, as defendant, seeking a restraining order and also a permanent injunction against Stewart, his agents, representatives and attorneys. On the filing of the complaint in such suit the respondent District Court and the respondent George W. Padbury, Jr., as a judge thereof, issued ex parte, a restraining order enjoining the relator Stewart and the relator Governor from in any wise interfering with respondent Craighead as chairman and executive director of said commission. Relator Stewart appeared in the suit by filing a motion to dissolve the restraining order. A hearing was had on the motion. Following the hearing the court dissolved the restraining order as to the relator Governor but refused to dissolve as to the relator Stewart, and made a further order continuing in force pendente lite the injunction against the relator Stewart who thereupon moved to dissolve such injunction. The motion was denied and the injunction continued in force. From the order refusing to dissolve the injunction an appeal was taken and is now pending.

The respondent Craighead and the relator Stewart each claims to be entitled to hold and exercise the office of chairman and executive director of the unemployment compensation commission of Montana.

The respondent Craighead claims under the warrant issued to him on May 6, 1937, by the then Governor, Roy E. Ayers.

The relator Stewart claims under the warrant issued to him on March 31, 1949, by Governor Bonner.

The question presented is one of law: Who, *under the law*, is entitled to hold and exercise the office?

At common law, an officer could only be removed for cause and after a hearing. Throop on Public Officers, sec. 362, p. 358. This was because at common law in England, a public office was considered as an incorporeal hereditament grantable by the

Crown in which the holder acquired and had an estate. 42 Am. Jur., Public Officers, sec. 9, p. 886.

That conception of a public office does not obtain in this country. Here a public office is considered a public trust. State ex rel. Grant v. Eaton, 114 Mont. 199, 133 Pac. (2d) 588. "With us, a public office has never been regarded as an incorporeal hereditament, or as having the character or qualities of a grant. That a public office is the property of him to whom the execution of its duties is intrusted is repugnant to the institutions of our country, and at issue with that universal understanding of the community which is the result of those institutions. With us, public offices are public agencies or trusts, and the nature of the relation of a public officer to the public is inconsistent with either a property or a contract right. Every public office is created in the interest and for the benefit of the people, and belongs to them. The right, it has been said, is not the right of the incumbent to the place, but of the people to the officer. * * * The incumbent has no vested right in the office which he holds, * * *" 42 Am. Jur., Public Officers, sec. 9, pp. 886, 887. "Public officers, in other words, are but the servants of the people, and not their rulers." 42 Am. Jur., Public Officers, sec. 8, p. 885.

An office created by an Act of the legislature is within the control of the legislature and "is taken in full view of all the vicissitudes of the legislative action, including removal for such cause as the legislative assembly may deem sufficient." State ex rel. Bullock v. District Court, 62 Mont. 600, 604, 205 Pac. 955, 957.

In the enactment of section 422 of the Revised Codes of Montana of 1935, supra, the legislature wrote into the law of this state, in concise language, the general rule respecting the holding of an office of which the duration is not fixed by law. Such rule is stated in the Annotation in 119 A. L. R. 1437, thus:

"It is a general rule that officers appointed for a fixed and definite term are not removable except for cause, in the absence of express statutory or constitutional authority to remove with-

out cause. But, in the absence of constitutional restrictions thereon, the power to appoint an officer carries with it the power to remove at the pleasure of the appointing power, where the appointment is not for a fixed or definite term.''

In 46 C. J., Officers, sec. 98, p. 964, it is said: ''Where the term of office is not fixed by law, the officer is regarded as holding at the will of the appointing power, even though the appointing power attempts to fix a definite term; and an officer removable at the pleasure of the appointing power has, in the strict meaning of the word, no 'term' of office.''

Again in 46 C. J., Officers, sec. 97, pp. 963, 964: ''The phrase 'term of office' is one generally used to mean the fixed period of time for which the office may be held, although it is also used to designate the period for which the office is actually held.''

Throop on Public Officers, secs. 303, 304, pp. 308, 309, says: ''The word 'term' is uniformly used to designate a fixed and definite period of time. * * * And an officer, who holds his office at the pleasure of another officer or board of officers, has no official term, within the meaning of a constitutional or statutory provision relating to such terms. * * * where an office is filled by appointment, and a definite term of office is not fixed by a constitutional or statutory provision, the office is held at the pleasure of the appointing power, and the incumbent may be removed at any time.''

Mechem on Public Officers, sec. 406, p. 260, states: ''So where the officer is appointed to hold during the pleasure of the appointing power, his holding is terminable at the will of the latter.'' Again in sec. 454, p. 287: ''In those cases in which the office is held at the pleasure of the appointing power, and where the power of removal is exercisable at its mere discretion, it is well settled that the officer may be removed without notice or hearing.''

In 43 Am. Jur., Public Officers, it is said: ''And in the absence of any constitutional inhibition, as where there is no provision requiring that the legislature in the creation of statutory offices prescribed fixed and definite terms, the legislature may

create an office to be held during the pleasure of the appointing power.'' Sec. 157, p. 17. ''When the term or tenure of a public officer is not fixed by law, and the removal is not governed by constitutional or statutory provision, the general rule is that the power of removal is incident to the power to appoint. Inasmuch as the tenure has not been declared by law, the office is held during the pleasure of the authority making the appointment, and no formal charges or hearings are required in the absence of some statute on the subject. The foregoing rule applies although the appointing power attempts to fix a definite term. This implied power to remove may not be contracted away so as to bind the appointing authority to retain a minor officer for a definite period.'' Sec. 183, pp. 31, 32.

People ex rel. Attorney General v. Hill, 7 Cal. 97, involved the authority of the appointing power to remove an officer, when the term of the office is not fixed by law. The authority to remove relied upon was a constitutional provision which states that ''when the duration of any office is not provided for by this Constitution, it may be declared by law, and if not so declared, such office shall be held during the pleasure of the authority making the appointment.'' Const. Cal. 1849, art. 11, sec. 7. This is the same as the general rule written into the law of this state by the legislative enactment set forth in section 422 of the Revised Codes of Montana of 1935, supra, and we here approve and adopt the below quoted construction of the provision so well stated by the Supreme Court of California, 7 Cal. at pages 102 and 103, to this effect: ''By a reference to lexicographers, it will be found that the word 'duration' signifies 'extent,' 'limit,' or 'time.' When, therefore, the time of holding is not fixed, the tenure of the office is at the pleasure of the appointing power. This power of removal cannot be divested or taken away, except by limiting the term.

''A law which provides that an officer may be removed in a certain way, or for a certain cause, does not restrain or limit the power of removal to the cause or manner so indicated. The power

to remove is an incident to the power to appoint, as a general proposition, and is made so expressly by the Constitution.

"The only way in which this power of removal can be limited is by first fixing the duration or term of office, and then providing the mode, if deemed necessary, by which the officer may be removed during the term."

See also: Brennan v. Riley, 3 Cal. (2d) 736, 46 Pac. (2d) 972, 974; Parsons v. Los Angeles County, 37 Cal. App. (2d) 666, 99 Pac. (2d) 1079, at page 1082; Smith v. Brown, 59 Cal. 672; People ex rel. Davidson v. Perry, 79 Cal. 105, 21 Pac. 423, at pages 425, 426; Higgins v. Cole, 100 Cal. 260, 34 Pac. 678; Patton v. Board of Health, 127 Cal. 388, 59 Pac. 702, 78 Am. St. Rep. 66; Sponogle v. Curnow, 136 Cal. 580, 69 Pac. 255; Farrell v. Board of Police Com'rs, 1 Cal. App. 5, 81 Pac. 674; Nightingale v. Williams, 70 Cal. App. 424, 233 Pac. 807, 809; Fee v. Fitts, 108 Cal. App. 551, 291 Pac. 889, 890; Decker v. Board of Health Com'rs, 6 Cal. App. (2d) 334, 44 Pac. (2d) 636; Chambers v. City of Sunnyvale, 56 Cal. App. (2d) 438, 132 Pac. (2d) 849; Gallena v. Scott, 136 N. J. L. 70, 54 A. (2d) 481; Kinsland v. Mackey, 217 N. C. 508, 8 S. E. (2d) 598; State ex rel. Kositzky v. Prater, 48 N. D. 1240, 189 N. W. 334; Childs v. State, 4 Okl. Cr. 474, 113 Pac. 545, 548, 33 L. R. A., N. S., 563; Morris v. Parks, 145 Or. 481, 28 Pac. (2d) 215, 216; Duke v. Franklin, 177 Or. 297, 162 Pac. (2d) 141, 146; McFeeters v. Parker, 113 Vt. 139, 30 A. (2d) 300; Eckloff v. District of Columbia, 135 U. S. 240, 10 S. Ct. 752, 34 L. Ed. 120; Shurtleff v. United States, 189 U. S. 311, 23 S. Ct. 535, 47 L. Ed. 828; Compare Eastman v. School District No. 1, Mont. 180 Pac. (2d) 472.

The concluding sentence of section 10(a) of the Unemployment Compensation Law (Ch. 137, Laws of 1937) reads: "The governor may at any time, after notice and hearing, remove any commissioner for inefficiency, neglect of duty, malfeasance, misfeasance, or nonfeasance in office." This provision expressly authorizes the governor to remove the two per diem members of the commission before the expiration of the term fixed by law for their holding and is in addition to modes provided in sections

11687 to 11702, inclusive, and 11588 of the Revised Codes of Montana of 1935. However, neither the above quoted provisions of section 10 of the Unemployment Compensation Law nor the provisions of sections 11588 and 11687 to 11702, supra, "restrain or limit the power of removal to the cause or manner so indicated." People ex rel. Attorney General v. Hill, supra. Nor do such provisions in any wise or manner restrain or limit the power of the governor to remove, under section 422, R. C. M. 1935, the third member of the commission, the duration of whose office is not fixed by law. Section 107 of the Revised Codes of Montana of 1935 provides: "The omission to specify or affirm in this code any ground of forfeiture of a public office, or other trust or special authority conferred by law, or any power conferred by law to impeach, remove, depose, or suspend any public officer or other person holding any trust, appointment, or other special authority conferred by law, does not affect such forfeiture or power, or any proceeding authorized by law to carry into effect such impeachment, removal, deposition, or suspension."

Section 10, supra, added no new or additional grounds for the removal of public officers nor did it divest the courts of any of the power conferred upon them by law to order the removal of public officers for cause. All the section does is add to and increase the scope of the governor's power of removal.

An examination of other acts passed by the legislative assembly of 1937 clearly shows that such body knew that the term of office fixed by statute cannot be cut down by the appointing power without a showing of cause but that where the term of office is not fixed by law the appointee may be removed at the pleasure of the appointing power at any time without notice or hearing.

In the enactment of House Bill 65, commonly known as the "Hitler Bill" (Ch. 5, Laws of 1937), the 1937 assembly conferred upon the governor the most extraordinary and drastic powers of arbitrary and wholesale removal of appointive officers ever placed upon the statute books of this state, but even this enactment recognized that it had application only to those whose

terms are not fixed by law and that the governor had no authority to arbitrarily cut short a definite term of holding fixed in the law. The Act applied to, and in each of its first three sections expressly mentioned, any "administrator" appointed by any "civil executive state officer, board, commission, bureau, department or authority of any kind appointed by the governor," expressly providing, however, that its provisions "shall not apply to * * * administrators * * * *whose term and tenure of office* * * * *are now fixed by law.*" Section 1, Ch. 5, Laws of 1937. (Emphasis supplied.)

The respondent Craighead was appointed by the governor as the third member of a commission whose duty it is "to administer this act." Sec. 11 of Ch. 137, Laws of 1937. He was "designated as chairman at the time of his appointment" and became the "executive director." Sec. 10 of Ch. 137, supra. Respondent Craighead was thus an "administrator" appointed by the governor whose term of office was not fixed by law and whose "employment and appointment" was expressly subject to being arbitrarily "terminated and discontinued" by the governor under the provisions of Chapter 5, Laws of 1937, supra.

The acts of the 1937 legislative assembly evidence an intent on the part of that department of government to increase, extend and add to the powers of the governor and nowhere do they manifest any intent to curb, limit or take from the governor any of his powers or authority.

Under section 2815.63 of the Revised Codes of Montana of 1935, the three elective state officers comprising the state board of examiners constituted the "Montana liquor control board," but the 1937 legislative assembly repealed this law and provided that such board shall consist of three members "to be appointed by the governor" (sec. 1 of Ch. 30, Laws of 1937).

Other acts of the same assembly may be cited conferring vast additional powers upon the chief executive and effecting far-reaching changes in the theretofore existing laws of the state.

Notwithstanding, it is here urged that in providing that the members of the unemployment commission shall be appointed by

the governor ''on a non-partisan merit basis'' (sec. 10, Ch. 137, Laws of 1937), the 1937 legislative assembly, by the use of the quoted words, thereby expressed the legislative intent to take from the governor the arbitrary power of removal from office of the chairman and executive director of the commission the duration of whose office the legislature designedly declined to fix by law and to make such officer subject to removal only for cause and after notice and hearing as is the case of the two per diem members whose terms are fixed by law at six years each.

The plain words of the Act admit of no such strained construction. The words are simple and ordinary ones and are to be ''construed according to the context and the approved usage of the language; * * *'' Sec. 15, R. C. M. 1935.

According to Webster's New International Dictionary: A *non-partisan* is a person ''appointed or elected without regard to political affiliations; not controlled by parties or party spirit or interests.''

*Merit* means, ''To earn by service or performance; to have a right to claim as reward; to deserve; as, to *merit* favor, punishment.'' It also means, ''Due reward or punishment; usually, reward deserved; a mark or token of excellence or approbation.'' *Basis* comes from the Latin and Greek ''basis'' which meant a stepping, step, a base, or pedestal, and the English word as here employed means the foundation, ''The ground work; the first or fundamental principle.'' State ex rel. Norwood v. Kansas City & M. R. & Bridge Co., 106 Ark. 248, 153 S. W. 614, at page 616.

''Merit,'' as used in reference to merit as a qualification for office, is not necessarily synonymous with ''fitness,'' since a person, by reason of his faithful service in the army, and his good citizenship since his discharge therefrom, can very properly be said to merit any appointment in the civil service for which he is fitted. People ex rel. Drake v. Knauber, 43 App. Div. 342, 60 N. Y. S. 298, 300. Compare: People ex rel. Tobin v. Knauber, 27 Misc. 253, 57 N. Y. S. 782, 783.

''According to Webster, 'merit' used as a noun means 'due

reward or punishment; the quality of deserving well or ill; desert.' The original significance of the Latin root was to get a share." State ex rel. King v. Emmons, 128 Ohio St. 216, 190 N. E. 468, 470.

In suggesting to the governor that the members of the unemployment compensation commission shall be appointed on a "non-partisan merit basis" the 1937 legislative assembly cannot be said to have thereby intended to curb the governor's power of appointment or to limit or interfere with his discretion or to control his selection of appointees for the legislature gave to the governor a free hand in picking commissioners and said that he could reward, with the appointments, any persons who merited his favor or who by service or performance had earned his approbation without regard to their political affiliations. In other words, the law simply says the governor may appoint whom he pleases to the office exactly as the "Hitler Bill" provided that he may remove whom he pleases save only those "whose term and tenure of office * * * are now fixed by law." Sec. 1, Ch. 5, Laws of 1937.

Where there is discretion in the removing power, as here, the power of removal may be exercised without notice or hearing. Commonwealth v. Harriman, 1883, 134 Mass. 314, 329; Attorney General v. Cahill, 169 Mass. 18, 47 N. E. 433; Bailen v. Board of Assessors of City of Chelsea, 241 Mass. 411, 135 N. E. 877; McFeeters v. Parker, supra; Kinsland v. Mackey, supra; Chambers v. City of Sunnyvale, supra.

In 43 Am. Jur., Public Officers, it is said: "The general rule as to offices created to be filled by appointment is that if the legislature does not designate the term of the office, the appointee will hold only during the pleasure of the appointing power, and may be removed at pleasure, at any time without notice or hearing. * * * If the power to remove at will is conferred, by implication the power to remove for cause is excluded on the ground that it is not contemplated that the removed officer should be put to the expense of a hearing and trial." Sec. 184, pp. 32, 33. Again: "Where a public officer is removable at

478

pleasure, his removal may be effected, so far as his title to the office is concerned, by a declaration of removal; * * *'' Sec. 213, p. 53.

It is urged that the respondent Craighead holds office under the "merit system" and that his removal from office is an attack upon that system. Such contentions are wholly without merit. There has never been a law in this state nor any rule or regulation of the unemployment compensation commission providing for the giving or taking of any competitive examination to qualify for appointment as a member of the commission and no commissioner has either been required to take nor has he taken any competitive examination to establish his qualifications or fitness for such office. The commissioners are not employees of the commission but they constitute and are the commission. As such they are exempt and excluded from classification as civil service employees and civil service laws generally recognize the appropriateness of such exemptions. As is stated in 10 Am. Jur., Civil Service, sec. 13, p. 934; ''The scope of civil service laws is generally limited so as to exclude from their operation certain classes of public officers and employees. Among those who are expressly exempted under various laws are * * * heads of departments * * * and 'professional experts'.''

Respondents cite and strongly rely upon the first opinion of the Supreme Court of Arizona in Donaldson v. Sisk, 57 Ariz. 318, 113 Pac. (2d) 860, involving mandamus brought by a classified civil service employee against the three members of the unemployment compensation commission of Arizona. That opinion construed the classification plan adopted pursuant to a 1936 statute of that state providing for the position of executive director for which the plaintiff Donaldson qualified by successfully passing a competitive merit system examination. The plaintiff Donaldson, unlike the respondent Craighead, was not a member of the commission but was simply an employee thereof and as such employee he was included in and covered by the merit system of Arizona. In 1941 the Arizona legislature enacted a new law creating a new commission and expressly providing for the man-

ner in which the position of executive officer of the commission shall be filled, and this changed the entire situation occasioning a second opinion reported as Donaldson v. Sisk, 57 Ariz. 483, 114 Pac. (2d) 907, 909, wherein the court construed the new (1941) law and held that "such direction by the legislature takes precedence of any regulation established under the merit system provided by the law of 1936, or under any merit system which may be established by the law of 1941."

It is the second or last opinion in the Donaldson case, supra, 114 Pac. (2d) 907, and not the first opinion, 113 Pac. (2d) 860, that sheds light upon the rules and principles of law here applicable. The rewarding of a person who happens to merit the approbation of the governor to such a degree as to bring real pleasure and satisfaction to him in appointing such person to an office at the governor's disposal is one thing and may be interpreted as appointing on a "non-partisan merit basis." However, this is a far different matter from conducting a competitive examination and thereafter selecting from the competing examinees the one who passed the examination with the best and highest grades thereby evidencing his merit for the position to be filled. This is the "merit system" of selecting the best qualified person for the particular position to be filled and no such "system" has been adopted in this state, as yet, for selecting members of the unemployment compensation commission.

The Unemployment Compensation Law, Ch. 137, Laws of 1937, inter alia, provides that the commission "shall have power and authority to adopt, amend, or rescind such rules and regulations, to employ such persons * * * and take such other action as it deems necessary or suitable to that end. * * * Sec. 11(a).

"General and special rules may be adopted, amended, or rescinded by the commission only after public hearing or opportunity to be heard thereon, of which proper notice has been given. General rules shall become effective ten days after filing with the secretary of the state and publication in one or more newspapers of general circulation in this state. Special rules shall become effective ten days after notification to or mailing to the

last known address of the individuals or concerns affected thereby. Regulations may be adopted, amended, or rescinded by the commission and shall become effective in the manner and at the time prescribed by the commission. Sec. 11(b).

"* * * The commission shall cause to be printed for distribution to the public the text of this act, the commission's regulations and general and special rules, its annual reports to the governor, and any other material the commission deems relevant and suitable and shall furnish the same to any person upon application therefor. Sec. 11(c).

"* * * Subject to other provisions of this act, the commission is authorized to appoint, fix the compensation and prescribe the duties and powers of such officers, accountants, attorneys, experts, and other persons as may be necessary in the performance of its duties under this act. * * * The commission shall classify positions under this act and shall establish salary schedules and minimum personnel standards for the positions so classified. The commission shall provide for the holding of examinations to determine the qualifications of applicants for the positions so classified, and except for temporary appointments of not to exceed six months in duration, such personnel shall be appointed on the basis of efficiency and fitness as determined in such examinations. * * * The commission shall establish and enforce fair and reasonable regulations for appointments, promotions, and demotions based upon ratings of efficiency and fitness and for terminations for cause." Sec. 11(d).

. Pursuant to section 11, supra, of the Unemployment Compensation Law the commission adopted elaborate rules and regulations termed "Rules and Regulations for Merit System of Personnel" but therein specifically exempting from such merit system all three members of the commission.

The rules, so far as here pertinent, provide: "Article I—Definitions. The following definitions apply throughout this rule, unless the context clearly requires another meaning. * * * 7. 'Exempt Position' means a position herein designated as a position exempted from the application of this rule. The exempt

positions in the agency are the following: Chairman and Executive Director of the Unemployment Compensation Commission of Montana, Appointed Members of the Unemployment Compensation Commission of Montana, and part-time janitors. * * *

"Article VIII—Appointments. Section 1—Original Appointments. Paragraph 1. All appointments to positions in the agency exclusive of exempt positions shall be made in accordance with this rule. * * *

"Article XXI—Applicability. All positions, *other than those hereinbefore exempted in Article I, definition 7,* authorized in the administration of the Unemployment Compensation Commission Law of Montana shall be filled by persons selected on the basis of merit in accordance with this rule. * * *" (Emphasis supplied.)

This is the commissioners' own interpretation of the Unemployment Compensation Law. It is the construction accorded the Act by Governor Ayers who appointed respondent to office and by Governor Bonner who removed him therefrom. Each governor was and is learned in the law. Each is an able lawyer of wide experience. Governor Ayers served long and well as a district judge, as a representative in the Congress of the United States, and on numerous occasions had sat on this court, prior to his election as chief executive of the state. Governor Bonner long served as counsel for various state administrative boards and agencies and later as attorney general, prior to his election to the office of governor. The construction given the law by these governors, each acting under his official responsibility, is entitled to great respect and considerable weight, especially in the light of the rule that, "If the language of a statute specifying the term of office of an official is ambiguous, the interpretation which limits the term to the shortest time will be adopted." 46 C. J., sec. 101, p. 965. See also: Marcellus v. Wright, 61 Mont. 274, 286, 202 Pac. 381, 80 A. L. R. 1292.

In Bynum v. Strain, 95 Okla. 45, 218 Pac. 883, it is said: "In the absence of authoritative law, the judiciary is without jurisdiction to direct the Governor in the management of executive

affairs and powerless to enforce its mandates, should it assume to do so. * * * The elective officer is responsible directly to the electorate; he is elected by the voters, and the public has a right in his tenure of office, a right which can be properly determined by the courts only, and the courts have universally and very properly so held. But a different principle is involved in the case of an appointee to an appointive position in a subordinate branch of the special sphere of duties and responsibilities of the Chief Executive. An appointee to such a position is selected by the Chief Executive for the purpose of aiding the executive in carrying out his sense of duties and responsibilities to the public, and with the belief that such appointee will work in harmony with and aid the Governor in fulfilling his sense of duty to the public. It is the Governor, the Chief Executive, who is held responsible to the sovereignty for errors in his executive and administrative policies. The appointee is responsible to the Chief Executive, and, in the absence of express authority, the judiciary has nothing to do with the Chief Executive's judgment, conscience, sense of duty, or responsibilities.'' 218 Pac. at pages 888, 889.

As is said in Wyman's Administrative Law, sec. 49, pp. 176, 177: ''As the selection for office is different in appointment and in election, removal from office is different in the case of officers that have been appointed and in the case of officers that have been elected. If there is one single principle in the whole question it is this: that the power of selection and the power of removal are correlative things. The power that selects may remove. An officer who has appointed may dismiss by this rule. * * * So the people who elect may alone dispose by the same rule. * * * Upon the whole, the principle stands that the power to select involves the power to remove.''

The respondent Craighead was appointed to his office by the then Governor. As the duration of his office is not fixed by law, respondent held at the pleasure of that Governor. Sec. 422, R. C. M. 1935. A second Governor succeeded to the office theretofore occupied by the appointing Governor and respondent

then held at his pleasure. Now a third Governor has taken office and it pleases him not that respondent should longer serve on the commission. Respondent was so informed and the Relator Stewart was appointed to the office and has qualified. In dismissing the respondent Craighead and in appointing the relator Stewart, Governor Bonner, in whom is vested the supreme executive power of the state, acted within the authority conferred upon him by the law.

It is therefore ordered and adjudged: That the injunction order of the respondent district court and George W. Padbury, Jr., a judge presiding therein, be permanently dissolved; that the respondent Barclay Craighead was lawfully removed as a member and as chairman and director of the unemployment compensation commission of Montana effective from and after March 31, 1949; that the respondent Craighead be and he is hereby ousted and excluded from said office and the powers, privileges and emoluments thereof; that commencing April 1, 1949, the relator Carroll M. Stewart was, has been and is the duly appointed and qualified chairman and director of the unemployment compensation commission of Montana and as such was and is entitled to the powers, privileges and emoluments and to perform and discharge the duties of said office; and that from and after March 31, 1949, the respondent Craighead has had no right, title or claim in or to said office or in the compensation, salary or emoluments thereof.

Associate Justices Metcalf and Bottomly concur.

MR. JUSTICE FREEBOURN (concurring in result):

I concur in the result reached because:

At the time the Unemployment Compensation Law was enacted, March 1937, section 422, Revised Codes of Montana, 1935, was, had been for many years, and is now, in full force and effect as a law of the state of Montana. It is as follows:

"Term of office, when not prescribed. *Every office* of which the duration is not fixed by law is held at the pleasure of the appointing power."

Knowing this, the Montana legislature of 1937 enacted the Unemployment Compensation Law, Chapter 137, Session Laws of Montana 1937. In part, at page 439, the legislature said: "Unemployment Compensation Commission. Section 10(a) Organization. There is hereby created a commission to be known as the unemployment compensation commission of Montana. The commission shall consist of three members who shall be appointed by the governor * * * Two of the members of the commission shall serve on a per diem basis * * * Each per diem member shall hold office for a term of six years * * *. The *third member* of the commission, who shall be designated as chairman at the time of his appointment, shall be paid a full-time salary in an amount to be fixed by the governor * * *"

Mr. Craighead is the third "member" and "chairman" of the unemployment compensation commission. His term of office is not fixed. Had the legislature intended that the "third member" hold during good behavior or for a fixed term or "duration," it would have so said.

Since the "duration" of the term of Mr. Craighead was "not fixed by law," he held his office under section 422, above, "at the pleasure of the appointing power" (the governor).

When the governor, exercising the pleasure given him by such law, terminated Mr. Craighead's term of office, Mr. Craighead ceased to be a member of the unemployment compensation commission of Montana with no power to further act as member or chairman of such commission.

MR. JUSTICE ANGSTMAN (dissenting):

I agree with many of the elementary principles of law announced in the majority opinion but deny that they furnish any assistance in determining the question before us. I do not take issue with what is said in the majority opinion regarding the learning and achievements of Governor Ayers and Governor Bonner. I merely assert that the question before us is not in any manner affected by the experience, qualifications or ability of either. The so-called Hitler Bill (Ch. 5, Laws of 1937) re-

ferred to in the majority opinion has nothing to do with the issue before us. It is limited to the appointment and removal of assistants, deputies, agents, attorneys, administrators, engineers, experts, clerks, accountants, stenographers and executive attaches. It has nothing to do with either the appointment or removal of public officers.

The single question presented by this proceeding is whether Barclay Craighead or Carroll Stewart is the chairman of the unemployment Compensation Commission. Craighead was appointed by Governor Roy E. Ayers in 1937 and has acted in that capacity ever since.

On March 31, 1949, Governor John W. Bonner, assuming that Craighead held at the will of the governor, appointed Stewart to the position effective April 1, 1949.

Chapter 137, Laws of Montana 1937, established the unemployment compensation commission. The legislature provided that the commission should cooperate with federal officials and agencies in carrying out the national employment system and expressly accepted the provisions of the Act of Congress and promised to observe and comply with the requirements thereof. Sec. 12(a).

In fact, Chapter 137 did not become effective unless approved by the federal social security board. Sec. 23. The Act of Congress provided in substance that federal funds would not be forthcoming to any states unless the state law for administration included provisions for the establishment and maintenance of personnel standards on a merit basis. Title 42 U. S. C. A., sec. 503. Acting pursuant to the requirements of the federal government the legislature by Chapter 137 provided for the creation of a commission and that it "shall consist of three members who shall be appointed by the governor on a non-partisan merit basis." Two members were to serve on a per diem basis and serve for six year terms. The third member was designated as chairman of the commission and the "executive director." As above noted all were to be appointed on a non-partisan merit basis.

The phrase "non-partisan merit basis" has acquired a distinct

and well known meaning. Once an appointment is made under it, removal can be accomplished only for cause and not upon personal considerations. Taylor v. McSwain, 54 Ariz. 295, 95 Pac. (2d) 415; In Donaldson v. Sisk, 57 Ariz. 318, 113 Pac. (2d) 860, 865, where the director of the unemployment compensation commission was involved, the Supreme Court of Arizona, quoting with approval from the case of Welch v. State Board of Social Security and Welfare, 53 Ariz. 167, 87 Pac. (2d) 109, said: "No employee could be appointed who did not comply with the regulations for competitive examinations set up by the board, and we think it was equally intended that no one should be removed except in pursuance of a fair and impartial system of separation from service. Such a system, in our opinion, must necessarily include (a) specific reasons for removal, and (b) a reasonable hearing before some designated and proper authority as to whether the party whose removal was sought fell within the reasons for removal set forth in the regulations established by the board."

After this decision contempt proceedings were instituted for not complying with the court's mandate. Those proceedings resulted in the decision reported in 57 Ariz. 483, 114 Pac. (2d) 907, which the majority opinion states "sheds light upon the rules and principles of law here applicable."

After the decision in 113 Pac. (2d) 860, was rendered, and in March, 1941, the legislature passed an Act changing the system in Arizona and it was because of this later Act that caused the defendants to refuse to comply with the order in 113 Pac. (2d) 860. The court in 114 Pac. (2d) 907, 909, said: "The merit system established under the Act of 1936 [in effect when the decision was rendered in 113 Pac. (2d) 860] is of no force and effect under the Act of 1941 except in so far as it may be adopted and approved by the Employment Security Commission provided by the later Act."

We have no later Act than Chapter 137 and it expressly provides that the commissioners shall be appointed on a non-partisan merit basis. The case of Donaldson v. Sisk, 57 Ariz. 483, 114 Pac. (2d) 907, has not changed the rule announced in 113 Pac.

(2d) 860, where the merit system is provided for by statute.

The Arizona Supreme Court also pointed out that the federal officials notified the state officials that further federal aid in the administration of the law would be withheld if the state officials insisted upon enforcing the 1941 law which did away with the merit system.

Our legislature in order to insure that at least some of the Montana taxpayers' money should not be transported to the Potomac and points eastward on a one-way ticket readily agreed to the merit system in the selection of personnel.

The Supreme Court of Oklahoma in speaking of the merit system in Burge v. Oklahoma Employment Security Commission, 200 Okl. Supp. 429, 195 Pac. (2d) 285, 289, had this to say: "We think the purpose and effect of the merit system is to take from the appointing power the right of arbitrary removal."

As said in King v. Cole, Ohio App., 62 N. E. (2d) 650, 652, "The entire purpose of the Civil Service Law is to create a merit system for the determination of the fitness and efficiency of those within the classified service and to prevent discharge therefrom without just grounds."

In Turrill v. Erskine, 134 Conn. 16, 54 A. (2d) 494, 496, the court said: "The state, in adopting the merit system law, in effect voluntarily established conditions governing, among other things, the suspension or discharge of its employees, with the purpose of protecting them against unjustified suspension or dismissal. * * * The merit system statute in effect writes into the contract of each employee the conditions which it embodies."

Other cases assuming that under the merit system there can be no removal at the mere will of the appointing power are: Ahlgren v. Cromwell, 179 Md. 243, 17 A. (2d) 134; State ex rel. Levy v. Pallotti, 133 Conn. 334, 51 A. (2d) 136; Gipner v. State Civil Service Commission of California, 13 Cal. App. (2d) 100, 56 Pac. (2d) 535; Stephenson v. Unemployment Reserves Commission of California, 34 Cal. App. (2d) 19, 92 Pac. (2d) 931; State ex rel. Neffner v. Hummel, 142 Ohio St. 324, 51 N. E. (2d) 900. The case of State ex rel. Hathaway v. Williams, 149 Fla. 48, 5 So.

(2d) 269, 271, involved facts very similar to those here. It involved the director of the Florida State Employment Service. His appointment was authorized by section 11 of the Florida Act, Laws 1937, c. 18402, F. S. A. sec. 443.11, to be made by the Governor. That section also specifically provided that he "shall hold office at the will of the Governor." After referring to section 12, subdivision D of the Florida Act, Laws 1937, c. 18402, F. S. A. sec. 443.12, which is identical with parts of subdivision (d) of section 11 of our Act, the court pointed out: "The record discloses that prior to December, 1938, there had been friction between the Florida Industrial Commission and the United States Employment Service with reference to the administration of the unemployment compensation laws. The differences were reconciled and it was agreed that on acceptance of the Wagner-Peyser Act, a Director of the Florida State Employment Service would be appointed under the merit system pursuant to Section 12, subd. D, as quoted."

The court then noted that sections 11 and 12, subd. D were in apparent conflict but concluded that removal at the will of the Governor was permissible only during the probationary period of six months and that thereafter the tenure was permanent and the incumbent then subject to removal only for cause. The court said: "If the Florida State Employment Service unconnected with the Wagner-Peyser Act [29 U. S. C. A., sec. 49 et seq.], was all that was involved, the question would be simple and might be answered by holding that the appointment and tenure were subject to the will of the Governor. But we are confronted instead with a pact on the part of the Federal Government under the Wagner-Peyser Act and the State Government under the Florida Unemployment Compensation Law. * * * Both sovereignties are committed to the merit system as a means of naming personnel to the Workmen's Compensation Division other than the exceptions enumerated.

"We have heretofore pointed out the circumstances under which the United States Employment Service exacted and the Florida Industrial Commission agreed that the Director of the

Florida State Employment Service would be appointed under the merit system. The governor at that time was party to this agreement, had knowledge of the provisions of Sections Eleven and Twelve as here quoted but acted pursuant to the latter and named petitioner because he secured the highest mark in the examinations held under the merit system. When this was done and petitioner completed his probationary period as provided under the merit system, we think his tenure became permanent, subject to removal for cause.''

Under the foregoing authorities persons appointed on a non-partisan merit basis may not be discharged except for cause. The legislature made it plain that it understood what was meant by the merit system and accordingly undertook to prescribe the causes which would be ground for removal. It provided in paragraph (a) of section 10 that: ''The governor may at any time, after notice and hearing, remove any commissioner for inefficiency, neglect of duty, malfeasance, misfeasance, or nonfeasance in office.''

It cannot be said that this provision for removal for cause applies only to the two commissioners appointed for fixed terms. It says the governor may remove any commissioner for the stated causes.

Where removal is for cause there must be notice and hearing. State ex rel. Nagle v. Sullivan, 98 Mont. 425, 426, 40 Pac. (2d) 995, 99 A. L. R. 321; State ex rel. Holt v. District Court, 103 Mont. 438, 63 Pac. (2d) 1026; State ex rel. Ryan v. Norby, 118 Mont. 283, 165 Pac. (2d) 302.

Section 422, R. C. M. 1935, which provides that, ''Every office of which the duration is not fixed by law is held at the pleasure of the appointing power,'' can have no application to one appointed under the merit system. Under such an appointment there is written into the contract of employment the condition that the employment is to continue until removal is made for cause or until the employee voluntarily chooses to give up the employment. An appointment under the merit system is not one

without a fixed term. The purpose of the merit system was to give permanency to the tenure.

One who is appointed to hold office during good behavior or until removed for cause such as under the merit system holds for a definite and fixed number of years, People ex rel. Akin v. Loeffler, 175 Ill. 585, 51 N. E. 785; Roth v. State ex rel. Kurtz, 158 Ind. 242, 63 N. E. 460; Board of Street Com'rs v. Williams, 96 Md. 232, 53 A. 923, and hence section 422 can have no application to such a situation and the conclusion cannot be drawn that he can be removed at the pleasure of the appointing power.

. The merit system places appointees in much the same situation as federal judges. So long as the position is retained the incumbent holds until removed for cause. It establishes a tenure for those appointed under the system. That is the reason why Congress insisted upon the merit system being used in selecting the personnel.

. The definition of "merit system" adopted by the majority opinion leaves no basis for holding that any of the employees of the unemployment compensation commission have any tenure or security in their respective positions. I think they have a permanent tenure status by reason of the fact that they are appointed under the merit system. The law requires the commissioners to be appointed under that system and if it gives a permanent tenure to employees it must also do so as to the commissioners, excepting of course the two who are appointed for fixed terms of six years.

Nor is it of any importance that the rules governing the merit system purport to exempt the executive officer of the state agency from the effect of those rules. The rules cannot supplant the Act of the legislature which specifically states that the commissioners shall be appointed on a non-partisan merit basis. Those rules are for the guidance of the agencies making appointments of employees and by their very terms are not made to fit appointments made by the governor. As to appointments made by the governor on a merit basis he can adopt such reasonable method as he sees fit in determining the fitness of applicants. Once he

makes an appointment, removal can be accomplished only for cause.

The presumption is that Governor Ayers, when he appointed Mr. Craighead, did his official duty (Subd. 15, sec. 10606), and that the law was obeyed (Subd. 33 id.), and that he satisfied himself of the qualifications of Mr. Craighead, and the same presumptions attach to the action of Governor Bonner in the recent appointment of Mr. Smith as one of the per diem members of the commission.

I think the Hon. George W. Padbury, Jr., was right in holding that Mr. Craighead is the incumbent of the position of chairman of the unemployment compensation commission until and unless removed for cause.